VIRGINIA S. BERTHOLD, ADMINISTRATRIX OF JOHN R. SARPY, Defendant in Error, v. PIERRE A. BERTHOLD, Plaintiff in Error.

1. *Principal and surety — Payment by surety — Extinguishment of obligation, to what extent — Subrogation.*—A surety who pays the debt of his principal is entitled to an assignment of the instrument paid. The payment of the

obligation by the surety extinguishes it so far as the creditor is concerned, but not as to any rights which the surety has acquired by its payment  It should still subsist, with its liens and priorities, to enable him to recover of the principal as well as to compel contribution by the co-sureties, or to avail himself of any securities or collaterals turned out by the principal.

So, where an obligation turned out as collateral is paid, the original instrument, so far as the condition is concerned, is paid and extinguished; but it is still alive in favor of him who has paid it, and he should be permitted to avail himself of any rights in regard to it, to which its purchase would entitle him.

## Error to St. Louis Circuit Court.

John R. Sarpy resided in France several years next preceding his death, which occurred April 26, 1868.  The defendant was the agent and attorney in fact of said Sarpy, and had possession of his assets in St. Louis, and collected rents, etc., for him, for all which he received a regular compensation.  Among the assets of Sarpy in the hands of defendant was a note for $10,000, dated May 9, 1865, payable twelve months after date.  The payment of the note was extended two years, making it finally fall due May 9, 1868, at which time it was paid.

This note was indorsed by Berthold and placed with Tesson, Son & Co., bankers, for safekeeping and collection, more than a year before it fell due.  While it so remained on deposit before its maturity, the defendant, Pierre A. Berthold, executed a note, as maker, for $4,000, for the accommodation of E. P. Tesson, the senior member of the firm of Tesson, Son & Co., and Tesson discounted said $4,000 note at the Third National Bank, depositing the $10,000 note belonging to John R. Sarpy as collateral security, without the knowledge or consent of Berthold.  The $4,000 note was dated December 11, 1867, and became due in sixty days, that is, on February 12, 1868.  On December 23, 1867, Tesson, Son & Co. failed and suspended payment, and on January 6, 1868, filed their petition in bankruptcy.  In their schedule they stated the note of Berthold among their liabilities.

Sometime in April, 1868, before the $10,000 note became due, defendant called on Tesson, Son & Co., and asked them for the Sarpy assets, notes, etc.  All were surrendered except this $10,000 note, which Tesson then informed Berthold had been

deposited as collateral security for Berthold's $4,000 note. Berthold being advised by counsel that the $10,000 note could not be released except on payment of said $4,000 note, went with Tesson to the Third National Bank, on May 12, 1868, after said $10,000 note had been paid at said bank, and said Berthold received, in full payment of said $10,000 note, said note of $4,000, made by himself, and $6,000 in cash.

Sarpy died, and defendant in error was appointed his administratrix. She brought this suit against Pierre A. Berthold to recover said $4,000. The facts were all agreed upon.

*Garesche & Mead*, for plaintiff in error.

I. At law there is no cause of action, because the plaintiff having received the note when it was past due, takes it subject to all of the equities attaching to it in the hands of the holder from whom he acquired it. Now, in the hands of the Third National Bank, from whom plaintiff received it, it was paid out of the collateral, and therefore the debt was extinguished. It matters not that it was paid out of plaintiff's funds. It was paid, and hence the note is dead.

II. In equity there could be no recovery, for it could only be had on the principle of substitution or subrogation; and subrogation and substitution occur only in case of " debtor and creditor," or in that of " principal and surety." Neither of these relations exist in this instance. Berthold owed no debt to Tesson, and therefore none to plaintiff. The agreed facts prove it to be an accommodation note drawn for Tesson's convenience. Tesson could as well have pledged the collateral for his own note. The Third National Bank gave credit on the strength of the collateral, not on that of the note of Berthold; hence it was no more Berthold's agency than Sarpy's through which the loss occurred. In the agreed facts it is expressly admitted that Tesson's transfer of a collateral was without the knowledge or consent of Berthold; and the act, when known to Berthold, was condemned by him. Hence, as the equities in favor of both are equal, the maxim applies, " *Potior est conditio defendentis.*" It is impossible to assign a reason why Berthold any more than Sarpy should be

responsible for this loss. Subrogation and substitution apply only to the debtor and creditor, principal and surety. (Sto. Eq. Jur. 732, § 637; Constant v. Matteson, 22 Ill. 556.) The doctrine of substitution, being one of mere equity and benevolence, will never be enforced at the expense of a legal right. (Fink v. Mahaffy, 8 Watts, 382; Bank of Pennsylvania v. Portius, 10 Watts, 152; Erb's Appeal, 2 Penn. 296; Ziegler v. Long, 2 Watts, 206; McGinnis' Appeal, 16 Penn. St. 448.) Only in a clear case is it permitted, and where it works no injustice to others. (Lloyd v. Galbraith, 32 Penn. 103.)

III. Where there is a bond and no mortgage, and it is paid, the bond is *functus officio*, and no recovery can be had on it at law or in equity. (Sto. Eq. Jur. 578, § 499 *a*; Gadsden v. Brown, Speer's Eq. 37; Farmers' Bank v. Gilson, 6 Penn. St. 57; Bank v. Alger, 2 Hill's Ch. 267; Houston v. Branch Bank at Huntsville, 25 Ala. 261; Foster v. Trustees of Athenæum, 3 Ala. 302; Bibb v. Martin, 14 S. & M. 93; Bush v. Stamps, 26 Miss. 465; Garth v. Campbell, 10 Mo. 154; Hays v. Steamboat Columbus, 23 Mo. 234; Jones v. Bragg, 33 Mo. 339; Wade v. Beldmeir, 40 Mo. 486; Stewart v. Atkinson, *ante*, p. 510; Atkinson v. Angert, *ante*, p. 515.)

*Holliday*, for defendant in error.

I. The defendant, as maker of the note, is liable to plaintiff's intestate, who has paid full value for the same. (Holmes & Drake v. De Camp, 1 Johns. 36; Mechanics' Bank v. Hayard, 13 Johns. 356.)

II. Upon the payment of the amount of the note to the National Bank out of John Sarpy's funds, equity instantly subrogated John Sarpy to all the rights of the bank. Subrogation, in this case, is the right to be regarded as the purchaser of Berthold's note. (Bailey v. Broomfield, 8 Harris, 41; 1 Lead. Cas. Eq. 153.) The right of subrogation extends beyond the mere or ordinary and familiar relation of principal and surety, to every instance in which the position of two parties is such as to render one of them primarily liable for a debt which is a charge upon the estate of the other; for payment will give the latter a right to enforce

all the remedies of the creditor against the latter. (Stevens v. Goodenough, 26 Verm. 676; Morris v. Oakford, 9 Barr, 498.) The equity of a surety to be subrogated to the rights which the creditor has against the principal debtor or his estate exists as well where the surety's property only is pledged as where he came under a personal responsibility. (3 Paige, 614, 642, 648; 11 Wend. 313; 7 Md. 164; 21 Barb. 262; Carter v. Jones, 5 Ired. 193; 8 Harris, 281.) The right of subrogation is wholly independent of the consent of those against whom it is enforced, and exists wherever the circumstances are such as to vest the property in the debt in those who seek to subrogate. (1 Comst. 505; 25 Verm. 28; 9 Barr, 212.) Sureties are entitled to the benefit of all securities taken up by them, also to collaterals. (1 Sto. Eq. Jur., § 499; 34 Ill. 489; 3 Cow., U. S., 461; 19 Mo. 622.)

III. Payment by one who stands in the relation of a surety, although it may extinguish the remedy or discharge the security as it respects the creditor, has not that effect between the surety and the principal debtor. As between them it is in the nature of a purchase by the surety from the debtor. It operates an assignment in equity of the debt and of all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities and in favor of the surety; the debt and all its incidents and obligations are considered as still subsisting. Parties incurring subsequent responsibility are as much entitled to the benefit of this rule as if their liability arose from, or was cotemporaneous with, the original obligation. (Cottrell's Appeal, 11 Harris, 294; Haven v. Foley, 19 Mo. 622; Powell's Ex'r v. White et al., 11 Leigh, 309; Mathey's Heirs v. Calhoun, 12 Leigh, 265, 274; 1 Johns. Ch. 409-13; 9 Watts, 451; 3 Watts & Serg. 401-4; 1 Barr, 512; 1 Hill's Ch. 344, 351; 2 Har. & Johns. 238; 4 Har. & Johns. 307-9; 5 Har. & Johns. 423-7; 2 Har. & Gill, 88-91; 2 Bland, 509, 529; 1 Harrington, 374, 377-8, and note.) Accordingly, if the First National Bank had canceled or surrendered Berthold's note to him discharged, the right of subrogation in John Sarpy would still exist. (See 18 Me. 400; 36 Me.

36—VOL. XLVI.

322 ; 5 Ired. Eq. 193 ; 1 Comst. 595 ; 9 Barr, 21 ; 8 Harris, 281 ;
25 Mo. 28 ; 1 Am. Lead. Cas. 408.)

BLISS, Judge, delivered the opinion of the court.

The $10,000 note due Sarpy was deposited as collateral security
for the payment of the one made by defendant for the accommo-
dation of Tesson & Son.   When the last-named note fell due,
the maker, Berthold, failed to pay it, and the holders took their
pay out of the proceeds of the note belonging to Sarpy.   Sarpy
was thus made to pay the debt of defendant, and now asks to
be subrogated to the right of the holder of defendant's note.
This, stripped of the unusual circumstances that surround it,
is all there is of the case as presented.   There is no question
as to the plaintiff's equity.  It would be altogether superfluous
to give the multitude of cases all pointing in the same direction,
where it is held that a surety who had paid the debt of another is
subrogated to all the rights of the creditor as to other securities in
his hands.   (Sto. Eq., § 499, and cases cited ; 1 W. & T. Eq. Cas.
144, 3d Am. ed., and cases cited ; Haven v. Foley, 18 Mo. 136 ;
19 Mo. 632.)   So, in the United States, though not in England,
it is held that a surety who pays the debt of the principal is
entitled to an assignment of the instrument paid.   (Sto. Eq., note
3 to § 499 c.)   This is disputed in Copis v. Middleton, 1 Turn.
& Russ. 224, upon the ground that an instrument thus paid is
extinguished and would be worthless in the hands of the surety.
But in Hodgson v. Shaw, 3 Myl. & K. 183, it was held, in an
elaborate opinion by Lord Brougham, that when a bond was given
as collateral security for another bond, the surety upon the col-
lateral bond who had paid it was entitled to be subrogated to all
the rights of the creditor as to the first bond ; that he had become
in equity its purchaser and was entitled to its assignment.   The
chancellor distinguished the case from Copis v. Middleton, and
held that the original security still subsisted, notwithstanding the
discharge of the second security, and notwithstanding the inability
of the creditor to avail himself of it ; but it subsisted " only to
the effect of clothing the surety with that creditor's rights against
the principal debtor."   It does not matter, so far as the rights

Berthold, Adm'x of Sarpy, v. Berthold.

of the present plaintiffs are concerned, which view is held, yet I can not but be impressed with the broader equity and superior reason of the American cases. Lord Eldon held, in Copis v. Middleton, that the payment of the obligation by the surety extinguished it. So it does, so far as the creditor is concerned, but it should not be extinguished as to any right the surety has acquired by its payment. It should still subsist with its liens and priorities to enable him to recover of the principal as well as to compel contribution by co-sureties, or to avail himself of any securities or collaterals turned out by the principal. So, when the second obligation turned out as collateral is paid, the original instrument, so far as the creditor is concerned, is paid and extinguished, but is still alive in favor of him who has paid it, and he should be permitted to avail himself of any rights in regard to it to which its purchase would entitle him.

Counsel for defendant claims that the doctrine of subrogation can only apply between parties to a contract, and where the relation of principal and surety exists. But I can see no reason in thus confining its beneficial operation, and the law does not so confine it. (Furnold v. Bank of State of Missouri, 44 Mo. 336.) Plaintiff's intestate was made against his will to pay the note of defendant. His equities would not have been greater had he been an indorser of the note or had he executed a collateral. It would seem that they should rather be less, for in that case he would voluntarily have assumed a risk. If, through the agency of defendant and bad faith of Tesson, Son & Co., he is compelled to pay this note, I am wholly at a loss to conceive how the equitable claim of his administratrix to all she can make out of the instrument he was thus made to pay can be less than if, as in Hodgson v. Shaw, he had given a collateral obligation to pay. Her rights arise from the fact that her intestate has paid, and was compelled to pay, what others should have paid; and for that reason she is entitled to whatever benefit she may derive from an assignment to her of the instrument thus paid. In Valle's Heirs v. Fleming's Heirs, 29 Mo. 152, though not a case like the present, the doctrine of subrogation was carried to its fullest extent, and founded upon the naked justice of the case and not upon contract. (See 4 Johns. Ch. 123, 130 ; 1 Comst. 599.)

Defendant also claims that he should not be charged, because the equities are equal; but in this he greatly mistakes the relations and mutual obligations of the parties. Suppose the plaintiff's intestate had consented that the note belonging to him be deposited as collateral, or that he had himself made a collateral promise in writing to pay defendant's note, it is clear that defendant would be bound to repay him. The fact that defendant was an accommodation maker could only avail him against his principal, nor against those whose obligations were subsequent to his.

This case is submitted upon an agreed statement of facts, and the pleadings are informal. Counsel upon both sides have argued it as though it were an equitable proceeding for subrogation, yet I can not see how it becomes necessary to resort to this doctrine in order to enable the plaintiff to recover.

Were there any securities to be reached, were any advantage to be derived from an assignment of the note, or did the plaintiff seek any other proper equitable relief, she has a clear equity which should command the interposition of the chancellor. But she seeks to avail herself of the personal liability of defendant, and against him she has a clear legal claim, and is entitled to the ordinary money judgment which she obtained, and which is affirmed. The other judges concur.