## JAMES M. BURRUS, Appellant, v. JAMES M. COOK et al., Respondents.

### Kansas City Court of Appeals, March 5, 1906*

1. SUBROGATION: Common Law: Civil Law: Chancery: Surety. The right of subrogation originated in the civil law, and though unknown to the common law was in time adopted and applied in a modified form by the chancery courts of England. Under the civil law it gave to a surety paying his principal's debt the "actions" of a creditor.

2. ———: ———: Payment: Surety. Payment at common law whether made by principal or surety operates as an absolute extinguishment of the debt, and English courts of equity, recognizing this, evolved the idea of founding an equitable right, not upon the creditor's "actions," but upon the fact of payment, giving the surety everything the creditor had except the debt itself.

3. ———: ———: ———: ———: American Rule. In the American states following the common law the paying surety has a cause of action from the implied promise of his principal to reimburse him, and by operation of law substituted to all the creditor's liens and securities. [Cases considered.]

4. ———: ———: Remedies: Election. The paying surety has his common-law remedy for debt against his principal and also his equitable action upon the paid security. The first depends for its existence upon the destruction of the debt, the other upon the debt being kept alive; and if he fails to pursue the former while available, it may be regarded as an election of the latter.

---

*Briefs sent to the Supreme Court.

117 App.—25

Burrus v. Cook.

5. ———: **Action: Limitation: Law: Equity.** The right of the paying surety to an action at law and to an equitable action are not concurrent remedies for the enforcement of the same cause of action; and each have their own period of limitation and the equitable proceeding will not follow the law in applying the statute of limitation.

6. ———: ———: **Fraud.** The paying creditor in pursuing his equitable remedy must do equity and can recover only so much as he had paid, and if he reaches for more a court of equity will stay his hand.

7. ———: **Common Law: Action: Remedy: Missouri Doctrine.** Missouri has adopted the American doctrine without any curtailment of the rights enjoyed by the creditor; and the surety may pursue his remedy at law under the statute or ground it upon his equitable ownership of the debt. [Cases reviewed.]

**Ellison, J., Dissenting.**

8. ———: **Pleading: Demurrer: Limitation: Exception.** The benefit of the Statute of Limitation may be had by demurrer where the face of the petition discloses the bar has been completed; and the exception relieving the plaintiff from a bar of the statute should be pleaded by him.

9. ———: **Action: Limitation: Surety.** The period of limitation begins to run against the surety from the day of his payment, since on that day an action accrues to him; and this applies in proceedings in equity as well as actions at law. [Missouri cases reviewed and Brewing Company v. Jordan, 110 Mo. App. 286, criticised.]

10. ———: ———: **Surety: Limitation.** The surety's right of action is the foundation of his recovery and his right to subrogation is a mere aid to his right of action, which is not based on any actual contract, but on an implied promise; and the statute only makes it effective when asserted within the five-year limitation; and this is true whether the right of the surety arises from an implied contract or from natural justice and equity.

11. ———: ———: **Limitations: Concurrent Jurisdiction.** In cases of this character the right to the action and its ultimate object are the same whether asserted in law or equity and courts of equity and courts of law have concurrent jurisdiction and in such cases equity will no more disregard the Statute of Limitations than would a court of law.

12. **ACT: Intention to Be Subrogated.** If the surety, who pays his principal's debt, does no act before his claim is barred, manifesting an intention to be substituted to the creditor's rights, equity will not subrogate him.

13. **ISSUES ALIUNDE PAYMENT OF DEBT.** There are many issues aside from the payment of the debt by the surety which it may be necessary for him to meet, such as the amount paid, whether it was necessary that he pay it, equities between the parties, etc., and it is necessary that these be met within the period of limitation.

14. ——: ——. So a surety on payment of the debt does not *ipso facto* become subrogated to the rights of the creditor.

15. **EQUITY: Implied Promise: Limitation.** A surety's right of action, whether considered as arising from an implied promise, or from principles of natural justice, must be asserted within the period of limitation.

16. **LIENS: Preferred Claims: Limitations.** In cases where possession and control of the evidence of indebtedness paid by the surety is necessary for his reimbursement, as if it represents a lien, or a preferred claim and the like, he will be considered the assignee in equity for the purpose of asserting such right. But equity will not make such assignment when such necessity does not exist *merely* to *avoid* the Statute of Limitations.

17. ——: ——: **Assignment of Judgment: Limitation.** Whether the surety upon payment takes an assignment of the judgment can make no difference in the period of limitation, since the right of action comes by the operation of law, and the same statute of limitation applies.

18. ——: ——: ——: **Evidence.** Though the surety has an assignment it does not affect the character of his evidence, and he must prove *aliunde* his suretyship and his payment, etc., as he would without the assignment.

19. ——: ——: **Limitation: Fraud.** The fact that the principal debtor may have fraudulently disposed of his property without the knowledge of the surety is not such fraud as to extend the time for bringing the action, since it does not tend to bring his action within the limitation prescribed by the statute.

20. **CERTIFIED, SUPREME COURT.** Deeming the decision in this cause contrary to the decisions of the Supreme Court in Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; and Bushong v. Taylor, 82 Mo. 671, and also contrary to the decisions of the St Louis Court of Appeals in Bauer v. Gray, 18 Mo. App. 164, and Williams v. Gerber, 75 Mo. App. 18, the cause is certified to Supreme Court.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

REVERSED AND REMANDED; TRANSFERRED TO THE SUPREME COURT.

*James Allen Prewitt & Olney Burrus* for respondents.

*Paxton & Rose* for appellant.

Briefs sent to Supreme Court.

JOHNSON, J.—This is a suit in equity to enforce the right of subrogation.    A demurrer to the petition was sustained upon the ground that the action pleaded is barred by limitation and the case is before us upon plaintiff's appeal.

Jacob Bowlin was the creditor of William Weese in the sum of three hundred and fifty dollars and plaintiff and defendant Cook were sureties for the debtor. On September 20, 1886, Bowlin recovered judgment upon the debt in the circuit court of Jackson county against all three obligors.    Weese, the principal, was and is insolvent and for many years has been a non-resident of the State.    Before the judgment was recovered, Cook, to evade his liability, fraudulently conveyed his property to his brother. On June 25, 1888, plaintiff, compelled to pay the full amount of the judgment, procured from Bowlin a written assignment thereof, but did not have it made of record.    Shortly after this Bowlin died and the administration of his estate has long since been closed.    Cook refused to discharge his liability as plaintiff's co-surety and plaintiff, having no reason to doubt the bona fides of the conveyance made by Cook, and believing in the reality of his apparent insolvency, made no effort to enforce contribution.    This suit followed the discovery of Cook's fraud.    Plaintiff conceding that no other remedy is open to him, because all others are barred

by limitation, seeks, as the equitable assignee and owner of the judgment, to recover one-half thereof from his co-surety. The petition is in three counts and alleges other facts, but those stated are sufficient for the purposes of this inquiry.

The principal questions for solution are these:

1. As the judgment creditor, Bowlin, held no securities for his debt, did the payment of the judgment by plaintiff operate, in equity, to substitute him in the place of Bowlin and thereby invest him with all of the rights and remedies against his co-surety that Bowlin would have had under the judgment, had the payment thereof not been made?

2. If this question should be answered in the negative, plaintiff cannot recover, for, under the statute, any action predicated alone upon the fact of payment. and not upon that of the equitable ownership of the debt would have to be brought within five years from the date of payment to escape the bar of limitation. But should the preceding question be answered in the affirmative, another arises. Under the statute then in force, the judgment was not devitalized until after the lapse of twenty years from the date of its rendition. Is plaintiff, as the equitable substitute for Bowlin, the judgment creditor, the successor to all of all the rights the latter would have possessed under the judgment as its owner to the extent of being vested with the full right of exercising them for the compulsion of contribution from his co-surety, or should he be curtailed in the enjoyment of these rights by limitations that would not have affected them, had they remained with the original judgment creditor? If, by the payment of the judgment, plaintiff's substitution for Bowlin became complete, his action upon the judgment is timely under the statute then in force, but if the substitution was partial, there may be room for saying that the limitations applicable to the statutory action for contribution (which is based upon the fact of

payment alone) also should be applied to actions founded upon the equitable ownership of the debt.

The subject now before us was considered in all of its essential features in the case of Brewing Co. v. Jordan, 110 Mo. App. 286, and the conclusion reached that the fact of the payment of the debt by a surety conferred upon him, not only the right to assert his statutory cause of action within the period of time prescribed, but also, through the medium of an equitable assignment of the debt itself, clothed him with all of the rights and remedies possessed by the creditor, so that two separate and distinct remedies or rather causes of action were open to him—one in the nature of assumpsit predicated upon the fact of payment and the other an equitable action founded upon the implied ownership of the obligation. In that case, as in this, the creditor held no collateral security, but notwithstanding this fact, we held that the debt had been assigned in equity and that in an action brought upon the note, by which it was evidenced, the surety could enforce his equitable right in the same period of time given by the statute for the assertion by the creditor of his legal right. A careful reconsideration of the principles discussed and a re-examination of the authorities consulted convinces the writer of this opinion that, both upon reason and authority, the conclusions there reached are in furtherance of substantial equity and should be sustained and followed, but as we now are confronted with a divergence of opinion among the members of the court relative to the questions decided in the Heim case, and which now confront us, their further discussion appears to be necessary.

The right of subrogation, that is, the substitution for the common creditor of a surety, who has been compelled to pay his principal's debt, originated in the civil law, and, though unknown to the common law, was in time adopted and applied in a modified form by the courts of chancery in England. The doctrine recognized

in the civil law is thus stated by Pothier in his "Treatise
on Obligations:" "It is to be holden, as a principle, that
all who are bound for a debt *for others* or *with others,*
by whom they ought to be discharged either for the whole
or a part, have a right, in paying such debt, to require
the cession of the actions of the creditor against the other
debtors, who are liable for it.    This obligation of the
creditor to cede his actions is grounded on this rule of
equity, that being commanded to love all men, we are
*bound* to grant them everything which they have an in-
terest in having, when we may do so without injuring
ourselves.    A debtor *in solidum* having then a just in-
terest in having the actions of the creditor, against his
co-debtors, to make them pay their part of a debt, which
they owe as well as he, the creditor cannot refuse it.  For
the same reason, he cannot refuse it to a surety and gen-
erally to all those who, being bound for the debt, have an
interest in being discharged in whole or in part by those
*for* or *with* whom they are debtors."

This clearly gave to the debtor, who paid the debt of
himself and his co-debtors, the "actions" of the creditor,
that is, his rights and remedies, regardless of all consid-
erations relating to liens or securities.    The substitution
was intended to be complete and to afford the debtor,
who paid, the right to use his creditor's hand for the en-
forcement of contribution from his co-debtors.

In the application of this principle by the English
courts, an obstacle was encountered in the rule of the
common law that makes the payment of a debt, either by
the principal obligor or a surety, operate as an abso-
lute   extinguishment   thereof and  denies   the  right
to  a  surety,  who  pays,  to  prevent  the  destruction
of  the  debt,  either  by  a  direct  assignment  there-
of from the creditor, or by any other means.    When
the  debt  is  paid  by  one  bound  in  law  to  pay, it
ceases to exist.  Therefore, the English courts of equity,
under the maxim that "Equity follows the law," recog-
nized this principle of the positive law and, treating the

debt as extinguished by payment, evolved the idea of founding an equitable right, not upon the creditor's "actions," but upon the fact of payment. In effect, they held that, notwithstanding the debt itself must be treated as non-existent, the fact that one of two or more co-sureties has paid the debt of all gives him in equity the right to be substituted for the creditor as to all liens and securities incidental to the debt. In short, the paying surety was given everything the creditor had except the debt itself, to indemnify him against the default of his principal and co-sureties.

This was the state of the law at the beginning of our national existence and, leaving here the civil and English law, we will turn to the consideration of what has been termed the American doctrine. In all of the states where the common law is followed, the English rule of substitution has been recognized and enforced. That is, under the hypothesis that payment by a surety extinguished the debt, he has been permitted to found a cause of action upon the implied promise of his principal or co-sureties to reimburse him for the amount expended by him in their behalf and, by the operation of law, has been substituted for the creditor as to all liens and securities held by the latter as indemnity against the default of his obligors.

But many courts have found that the English rule is inadequate to meet the requirements of equity and justice in all cases. There are rights, remedies and liens so indissolubly bound up with the debt itself that their destruction attends that of the debt. Therefore, in many cases, a strict adherence to the rule that payment extinguishes the debt means the withholding from the surety, who pays the debt of another, of a substantial indemnity, to which in real equity and good conscience he is entitled. To obviate such injustice, resort was had to the civil law for a principle upon which to found an independent cause of action that would meet the deficiencies of that borrowed from England. Accordingly, the rule

of the positive law relating to the extinguishment of the debt was restricted in its application to the relation between the creditor and debtors and held to be of no effect upon the rights of the debtors among themselves, and announcement was made of the principle that the surety, who paid the whole debt, could sue in equity upon the very debt itself, as the equitable owner thereof. One of the earliest and clearest statements of this doctrine is found in the case of Enders v. Brune, 4 Rand. 438: "In enforcing these principles, courts of equity look not to the *form,* but to the *essence* of the transactions. They consider the doctrine of substitution, not as one founded in contract, but the offspring of natural justice. Nor do they leave it to the creditor to cede his actions, but so soon as a third person, who has become bound with the debtor, pays his debt to the creditor, they substitute him to the creditor, giving him every right, every lien, every security, to which the creditor could resort, and if the creditor should, *with bad faith,* release any of those securities, it would be a bar *pro tanto* to his recovery against the surety." Aside from those in this State, other authorities sustaining this rule may be found by reference to the following text-books: Bispham's Principles of Equity, secs. 335-336, and cases cited; Beach on Equity Jurisprudence, sec. 811; Sheldon on Subrogation, secs. 1 and 159, and case cited; Pomeroy's Equity Jurisprudence, sec. 1419, and note, and cases cited; 7 Words and Phrases Judicially Defined, 6721, et seq.

From an examination of the authorities, it will be discovered that, independently of statutory enactments, the courts in those jurisdictions, where the American doctrine is upheld, also enforce causes of action founded upon the English rule, notwithstanding the two principles are essentially antagonistic in fundamental particulars. In both, the end to be attained is the same—the indemnity of the surety—and both are set in operation by the same fact, the payment of the debt. But at this point they diverge. One depends for its existence upon

the destruction of the debt; the other depends upon the debt being kept alive and cannot exist without it. Therefore, the conditions that sustain one destroy the other. Naturally, it is for the owner of these two remedies to select between them, and here arises the only really serious question before us. The cause of action, under the English rule, has received the positive approval of legislative action in most of the states—ours among the number (R. S. 1899, secs. 4504-5-6-7)—and the period of time in which suit may be brought in this State for its enforcement is five years (R. S. 1899, sec. 4273). It is not contended that the equitable cause of action founded upon the debt itself is abrogated by the statute, but it is held in some jurisdictions that, under the rule that "Equity follows the law," the equitable remedy must be pursued within the period fixed for the enforcement of the statutory remedy. Such is the view expressed in Junker v. Rush, 136 Ill. 179, where it is said: "The true rule would seem to be that a surety, by payment, does not become *ipso facto* subrogated to the rights of the creditor, but only acquires a right to such subrogation and that, before the substitution or equitable assignment can actually take place, he must actively assert his equitable right thereto. And this assertion must be made before his legal remedies are barred." This is directly in conflict with the principle stated in Enders v. Brune, supra, a leading case supported by the great weight of authority: "So soon as a third person, who has become bound with the debtor, pays his debt to the creditor, they [courts of equity] substitute him to the creditor, giving him every right, every lien, every security, to which the creditor could resort."

There is no room here for saying that payment does not *ipso facto* assign the debt at the election of the surety, who pays it, and the better rule, the one more consonant with equity and reason, treats the surety upon his election to assert his equitable ownership of the debt as having succeeded to the rights of the creditor

Burrus v. Cook.

at the time of payment, and in case the period for bringing suit upon the debt exceeds that for the assertion of the statutory cause of action, the fact that the surety permits the latter period to elapse without bringing suit is of itself to be regarded as an election to pursue the equitable remedy. Would not the creditor have had the right to sue at law upon the debt, had it remained unpaid? Upon what principle or reason, can it be said that some, but not all, of the creditor's rights and remedies are assigned with the debt? Is the position of the surety, who has discharged the obligation of another, of such doubtful equity that he should be hampered and restricted in the exercise of his acquired rights and remedies by arbitrary rules? If it is, there is no reason for even a partial substitution. But if equity is altogether upon his side, as all courts agree that it is, his substitution should be either complete or not at all. There is no middle ground that has the support of reason and right.

But it is said that as the rights of the surety, under either action, begin with the payment of the debt, limitation begins to run then, and, as the statute fixes the period for the statutory action, it must result that equity "will follow the law" by holding that period applicable to the equitable action upon the debt. The trouble with this argument is that it starts with a wrong premise. It assumes that the statutory and equitable remedies under consideration are concurrent remedies for the enforcement of the same cause of action. In a certain way, they may be regarded as concurrent remedies, for both reach back to the same right and have in view the same purpose, but they are not concurrent in the sense that both depend upon the same cause of action. Attention has been called to the antagonistic elements that serve to differentiate and separate them into remedies pertaining to different causes of action. That two or more independent causes of action may exist for the enforcement of the same right cannot be disputed, and that

the limitation applicable to one of such causes does not of its own force extend to the other is likewise elementary.   One illustration will suffice: A creditor holding the promissory note of his debtor at the maturity thereof accepts a new note maturing at a later time, not in payment of the one due, but as security therefor.   Default being made in the payment of the second note, the creditor may sue upon either.   Each note furnishes a cause of action, but both represent the same thing—the debt. No one would contend that the cause based upon the later note would be barred by the lapse of the period of limitation controlling that upon the first; yet, in principle, that is the substance of the claim here made. In following the law, equity in the case before us should recognize that applying to the obligation upon which the action is founded, and not that relating to another cause of action.

Further, it is said that, if the surety who pays the debt is to be vested with all of the rights, liens and remedies of the creditor, the door is opened for him to profit at the expense of his co-obligors.   That, by inducing the creditor to accept in full payment a less amount than that due, he, as the equitable owner of the debt, could force from his co-sureties contribution upon the full amount, and thereby avoid or lessen his own just burden at the expense of his co-sureties.     It must not be overlooked that the "cession of the creditor's actions" *is in equity and not in law,* and that it is implied for the accomplishment of a specific purpose—the indemnity of the surety.   When that purpose is served, the equity ceases and the equitable title falls with it.   The equitable assignee must sue in equity and must allege and prove the facts that entitle him to reimbursement from his principal or to contribution from his co-sureties.  In seeking equity, he must do equity, and if he reaches for more, the court will stay his hand and give him nothing more than his due.

Considering now the cases in this State, we find

that the principle of substitution as embodied in the "American doctrine" is adopted without the curtailment of any of the rights enjoyed by the creditor at the time of payment. [George v. Somerville, 153 Mo. 7; Storts v. George, 150 Mo. 1; Hackett v. Watts, 138 Mo. 502; Benne v. Schnecko, 100 Mo. 250; Humphreys v. Milling Co., 98 Mo. 542; Blair v. Railway, 89 Mo. 383; Ferguson v. Carson, 86 Mo. 673; Hammons v. Renfrow, 84 Mo. 332; Butler v. Lawson, 72 Mo. 227; First Baptist Church v. Robertson, 71 Mo. 334; Berthold v. Berthold, 46 Mo. 557; Furnold v. Bank, 44 Mo. 336; Arnot v. Woodburn, 35 Mo. 99; Miller v. Woodward, 8 Mo. 169.]

The surety's action may be under the statute or it may be grounded upon his equitable ownership of the debt. In the one case, the debt is treated as being extinguished by payment; while, in the other, it is kept alive for the benefit of the equitable assignee. In Furnold v. Bank, 44 Mo. 336, the principal announced in Enders v. Brune, supra, is adopted and followed. In Berthold v. Berthold, 46 Mo. 557, the right of substitution is recognized as applying to cases where no securities are in the hand of the creditor: "It would be altogether superfluous to give the multitude of cases all pointing in the same direction, where it is held that a surety, who has paid the debt of another, is subrogated to all the rights of the creditor as to other securities in his hands . . . So in the United States, though not in England, it is held that a surety, who pays the debt of the principal, is entitled to an assignment of the instrument paid . .

Lord ELDON held in Copis v. Middleton that the payment of the obligation by the surety extinguished it. So it does, so far as the creditor is concerned, but it should not be extinguished as to any right the surety has acquired by its payment. It should still subsist with its liens and priorities to enable him to recover of the principal, as well as to compel contribution by his co-sureties, or to avail himself of any securities turned out by the principal." In Burton v. Rutherford, 49 Mo.

255, with no thought of overruling the Furnold and Berthold cases, the Supreme Court upheld the right of the surety "to sue for money paid as surety" under the hypothesis that payment extinguished the debt. [To the same effect is Bushong v. Taylor, 82 Mo. 660.] In Benne v. Schnecko, 100 Mo. 250, the facts, in essential particulars, are identical with those before us. The creditor held no securities for his debt and had reduced it to judgement against the principal and sureties. The court said: "And the sureties, having paid the debt of their principal, Schnecko, became entitled to an assignment of the debt Bittner had recovered. Such payment did not extinguish the debt, at least in equity. Mere payment of the debt by the surety is considered to operate as an assignment of it to the party paying, with all the rights and liens which attached to it as incidents in the hands of the creditor."

This language conclusively answers the point supported by the Supreme Court of Texas in Faires v. Cockerell, 88 Texas 428, where it is held that no substitution as to the ownership of the debt takes place except when the creditor holds independent securities. It also answers the argument that the equitable title to the *res* does not vest in the surety by the fact of payment and that he acquires nothing more than the mere right to ask the court to make him the assignee of the debt.

In the Missouri cases, the intent to regard the right as springing from the broad principles of equity and justice is made manifest and the purpose of giving the surety, not only every right bestowed upon him by the statutory law, but also every right enjoyed by the creditor of benefit to him, is clearly expressed.

In giving logical effect to these principles, it must be held that the creditor's rights and remedies should be continued in equity for the benefit of plaintiff and that, as his suit is brought within the period in which the creditor could have sued, had he continued in the ownership of the judgment, the action is timely.

The judgment should be reversed and the cause remanded. *Broaddus, P. J.,* concurs; *Ellison, J.,* dissents.

ELLISON, J. (dissenting).—In dissenting from the view which my colleagues have taken, I have concluded to go over the whole record and state what I conceive to be the law involved in the case; remarking first upon the fact, that notwithstanding the extended examination made by them, they have not cited a case (save the one decided by this court) which involved the statute of limitations of the surety's right to sue, or in which that question was even referred to.

Plaintiff instituted the action by filing a petition seeking to recover from a co-surety one-half the amount he paid for their principal. The defendant demurred to the petition which was sustained by the court and judgment entered for the defendant, whereupon plaintiff appealed.

The petition alleges that plaintiff and defendant Cook were sureties on a note given by William Weese to Jacob Bowlin. That Bowlin, on September 20, 1886, obtained judgment on that note against all three parties for $355 with interest. That defendant then and there became legally bound as co-surety with plaintiff for one-half of said judgment. That Weese, the principal, has failed and refused to pay the judgment and has become a non-resident and insolvent. That the defendant Cook, with the purpose of avoiding the payment of any part of the judgment, prior to the rendition thereof, fraudulently, and without consideration, conveyed all his property to his brother and thereby rendered himself insolvent. That by reason of the insolvency of Weese and defendant Cook, he (plaintiff) was compelled to pay the full amount of the judgment on the 25th of June, 1888, and on that day, Bowlin, the plaintiff in the judgment, assigned the same to him. That by virtue of such assignment, plaintiff became subrogated to all the rights of Bowlin in the judgment and became the equitable

assignee thereof and entitled to recover one-half the amount thereof from defendant Cook. That Bowlin has long since died and administration on. his estate has closed, and in consequence, plaintiff cannot revive the judgment. That he cannot maintain an action at law against defendant and that he has at no time had an adequate remedy at law. Wherefore, plaintiff asked that he be substituted as a party plaintiff in said judgment and that it be credited with a payment of one-half thereof, and that he have judgment against defendant Cook for the remaining one-half. There were two other counts in the petition, but what we have stated is sufficient to base conclusions upon which will dispose of the case.

I. The ground of demurrer is that the petition shows upon its face that the claim or cause of action is barred by the Statute of Limitations. It is first contended by plaintiff that the Statute of Limitations cannot be invoked by means of a demurrer. We, however, are satisfied that the benefit of the statute may be had in that way. Whenever as in this case, the face of the petition discloses that the bar has become complete, a demurrer stating that as the ground is proper. [Henoch v. Chaney, 61 Mo. 129; State to use v. Bird, 22 Mo. 470; State ex rel. v. Spencer, 79 Mo. 314.] And, if the cause of action is such that it may be obviated by some exception in the statute, the facts stated in the petition should show such exception. In other words, the exception relieving plaintiff from the statute should be pleaded by him. [Humbert v. Trinity Church, 7 Paige 195.]

It will be noticed that in the cases cited (State to use v. Bird, and State ex rel. v. Spencer), the expression is used that a demurrer may be adopted as a mode of invoking the Statute of Limitations where the statute creates an absolute bar, "without any exceptions." As our statute has many exceptions to its application, the plaintiff relies on those cases. The expression was perhaps in-

advertently used. The authority cited in the first of the cases is Humbert v. Trinity Church, 7 Paige 195, where the language of Chancellor WALWORTH is exactly to the contrary. He says that, "if the case is within any of the exceptions of the statute, the complainant must state the fact in his bill." And that is stated to be the rule by Justice WASHINGTON in Wisner v. Barnet, 4 Wash. (C. C.) 659. We do not find that such qualification of the rule is made in any other cases than the two above noted. It is not made in Boyce v. Christy, 47 Mo. 70, nor in Henoch v. Chaney, supra, and we are relieved of any embarrassment from the expression by the later case of Heffernan v. Howell, 90 Mo. 344, where a demurrer was held properly sustained for the reason that the petition disclosed that the action was barred, "no reason or excuse whatever being alleged in the petition why the action was not commenced within the time prescribed by the statute for bringing the suit."

II.   It appears by the petition that plaintiff, as co-surety with defendant, paid the judgment in 1888, while the suit was not brought until 1903. The question presented is: When did the period of limitation begin to run against plaintiff; at the date of his payment of the judgment, for one-half of which he asks to recover; or at the date of the rendition of the judgment? or (stated in a different way), is the surety, who has failed to assert his right to the judgment, entitled to the full period of limitation for suit on the judgment? If the former, the period of limitation would be five years, and the action is therefore barred. If the latter, the period of limitation would be twenty years (as the statute then read), and the action would be therefore not barred. The question, as it relates to a principal and his surety, was presented to this court in Brewing Co. v. Jordan, 110 Mo. App. 286. That case was where a surety paid the principal's note, and more than five years afterwards, but within the ten-year limitation period for notes, brought

117 App.—26

his action in equity against the maker. He claimed that his payment operated as an equitable assignment of the note itself from the payee, and that his right of action was not barred until the note was barred. That claim was sustained by this court. I am now satisfied that it ought not to have been. I think it contrary to the view of the Supreme Court of the State. The period of limitation of an action, whether against the principal or co-surety, begins to run from the day of the surety's payment (in case against co-surety, of more than his share), for on that day a cause of action accrues to him. This is expressly decided in Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; Bushong v. Taylor, 82 Mo. 660, 671. And so it seems to have been decided in every other state where the question has been presented. [Junker v. Rush, 136 Ill. 179; Thayer v. Daniels, 110 Mass. 345; Harrah v. Jacobs, 75 Iowa 72; Johnston v. Belden, 49 Iowa 301; Faires v. Cockrell, 88 Texas 428; Hammond v. Myers, 30 Texas 375; Darrow v. Summerhill, 93 Texas 92, 105; Arbogast v. Hays, 98 Ind. 26; Joyce v. Joyce, 1 Bush. 474; Scott v. Nichols, 27 Miss. 94; Lowenthal v. Coonan, 135 California 381; Ryland v. Bank, 127 California 525; Reeves v. Pulliam, 7 Baxter 119; Barnaback v. Riener, 8 Minn. 59; Poe v. Dixon, 60 Ohio St. 125; Knotts v. Butler, 10 Rich. Eq. 143; Pickering v. Lieberman, 41 Fed. Rep. 376; Martin v. Frantz, 127 Pa. St. 389.] The same view is held by the English courts. [Davies v. Humphries, 6 M. & W. 153; Ex parte Snowden, 17 Ch. D. 44.] And the the same is stated by text-writers. [Wood on Limitations, sec. 145; Angell on Limitations, sec. 131; 1 Brandt on Suretyship, sec. 339; 1 Parsons on Contracts, 36 (bottom p.), 3 ib. 98; 2 Chitty on Cont's, 1231.]

But it is said that the decisions in this State on that subject were in actions at law and that, therefore they are not applicable to the present, or the Brewing Co. case, which are equity cases for subrogation. Some of the decisions were in law cases, but others were not.

Thus, Bushong v. Taylor was in equity. At page 662, of the report the brief for defendant shows that the action was on an implied liability to which the five-year period of limitation applied. At page 665, opposing counsel for plaintiff tacitly conceded this, but asserted that the statute did not begin to run until he paid the debt; and this view was sustained by the court at page 671. Several of the foregoing cases cited from other states were also actions in equity.

But, if all those cases had been actions at law, they would be of equal controlling authority in this case in equity. For the rule is well understood that equity follows the law and applies the same period of limitation. [Rogers v. Brown, 61 Mo. 167; Bauer v. Gray, 18 Mo. App. 164; Darrow v. Summerhill, 93 Texas 105; Junker v. Rush, 136 Ill. 179.] It is conceded that, in cases of this nature, courts of equity and of law have concurrent jurisdiction. What may be termed the right to the action and its ultimate object are the same, and the foundation of the action, as well as the amount of recovery, whether asserted at law or in equity, are the same. It is universally held that in all cases of concurrent jurisdiction, equity "will no more disregard the statute than a court of law." [Wood on Lim., sec. 58; 19 Amer. and Eng. Ency. of Law, 155.] "Statutes of limitation, . . . when they are addressed to the courts of equity as well as courts of law, as they seem to be in controversies of concurrent jurisdiction, they are equally obligatory in both forms as a means of promoting uniformity of decision." [Godden v. Kimmell, 99 U. S. 201; Murry v. Coster, 20 Johns. 585; M'Crea v. Purmort, 16 Wend. 460, 476; 2 Story Eq. Jur., sec. 1520; 1 Pomeroy Eq. Jur., sec. 419.] So it is said that the doctrine of substitution "will not be enforced at the expense of a legal right." [Rittenhouse v. Levering, 6 Watts & Serg. 198-200.]

In Brewing Co. v. Jordan, we treated the question as having been frequently decided by the Supreme

Court of this State and cited a number of cases, which I now conclude are not at all in point. In neither of them was there any question of limitations; nor was any reference made to such question in any way. But they were thought to have a bearing on the question because of expressions as to the right of a surety to be subrogated to the rights of the principal. Those expressions state the well-recognized general principle of law as well as equity, that, so far as necessary to protect the rights of the surety, a payment of the debt does not extinguish it. That, "it should still subsist with its liens and priorities to enable him to recover of the principal as well as to compel contribution by co-sureties, or to avail himself of any securities or collaterals turned out by the principal," and to that end, the surety could be considered in equity as having an assignment of the debt. [Berthold v. Berthold, 46 Mo. 557.] "No principle is better settled than when a surety pays the debt of his principal, he, by reason thereof, becomes entitled in equity to all of the rights, remedies, securities, funds, liens and equities which the creditor may have for the same debt." [Storts v. George, 150 Mo. 1; George v. Somerville, 153 Mo. 16.] "Mere payment of the debt by the surety is considered to operate as an assignment of it to the party paying with all the rights and liens which attached to it as incidents in the hands of the creditors." [Benne v. Schnecko, 100 Mo. 250.]

In thus asserting what the rights of a surety are, the Supreme Court did not say when nor within what time the surety should assert those rights. The statute itself has done that. The general law of the surety's rights on payment of his principal's debt, or more than his share as between him and his co-surety, was well recognized when the statute limiting the time when such rights should be asserted was enacted: so that, the general law and the statute taken together amount to this: that a surety, upon payment of the debt, has a right to the instrument upon which he is surety, with all the rights, secur-

ities, and liens, which attach to it, but he must *assert* those rights within five years after such payment.

"Where a surety who has paid the debt does not act before his claim is barred at law by the Statute of Limitations, manifesting his intention to put himself in the place of the original creditor, and thereby subrogating himself to the creditor's rights, equity will not subrogate him to those rights." [1 Brandt on Suretyship (3 Ed.), sec. 339.] Before a right to subrogation accrues to a surety, he must have paid the debt (in case of co-surety, more than his portion of the debt) and it must have been a valid debt at the time of his payment. Furthermore, as stated by Judge STORY, other issues "of a very complicated nature may arise, from counter equities between some or all of the parties, resulting from contract or from equities between themselves, or from peculiar transactions regarding third persons, . . . or from the very nature of the transaction [there may be] an exemption of one surety from becoming liable to contribution in favor of another." The learned author then proceeds to set out several apt illustrations of his statement. [1 Story's Eq. Jur., sec. 498.] These various issues of fact may be the subject of sharp dispute, and their solution will greatly depend upon oral testimony and the life and memory of witnesses. He should be required to establish his right within the period of its own limitation and not the period of the limitation of the original indebtedness, or of a judgment rendered thereon, for these periods might cover a great length of time; in this case, it is said, the space of twenty years. When he has thus established his right, while memory is less treacherous and witnesses are yet alive, *then* he becomes entitled to a period of limitation of the instrument itself.

So it is held that a surety, on payment of the debt, does not become, *ipso facto,* subrogated to the rights of the creditor, but only acquires a right to such subrogation (Hull v. Sherwood, 59 Mo. 172), which he must as-

sert before his legal remedy is barred. [Junker v. Rush, 136 Ill. 179; Johnson v. Belden, 49 Iowa 301; Rittenhouse v. Levering, 6 Watts & Serg. 190; Joyce v. Joyce, 1 Bush. 474.] And so Judge THOMPSON states the law in Bauer v. Gray, 18 Mo. App. 170. So it is said by Judge NAPTON that "The right of a security to recover from his principal the amount which he has paid in his behalf, is a right which may be established in a court of law; but his right to stand in place of his creditor, as to all securities, funds, liens, and equities which he may have, is a right which can only be established in a court of equity." [Miller v. Woodward, 8 Mo. 169, 175.]

In undertaking to defend the position that subrogation of a surety operates to place him literally in the creditor's shoes, with all the rights of the creditor, and to make him literally the owner of the creditor's claim (a note for instance) as though he were an ordinary assignee, and therefore entitled to the period of limitation prescribed for a note, one is led into the most unreasonable, illogical and inconsistent positions. Thus a creditor has the right, of course, to recover the full amount of the note, but the surety is not permitted "to speculate off his principal" nor his co-surety, and can recover no more than he has been compelled to pay for him. As, if the surety should compromise or otherwise adjust the note at less than its face, he can recover no more than he pays. [Hearne v. Keath, 63 Mo. 84, 89; 1 Brandt on Suretyship, sec. 233; Stone v. Harmel, 83 Cal. 547; 27 Am. and Eng. Ency. of Law, 480; Sinclair v. Redington, 56 N. H. 146; Tarr v. Ravencroft, 12 Gratt. 642.] So the indebtedness, for which he is surety, may draw the highest contractual rate of interest permitted by law and yet the surety (in absence of a statute) will only recover the legal rate on the sum he pays from the time of payment. [Bushnell v. Bushnell, 77 Wis. 435; Smith v. Mason, 44 Nebr. 610, 621.]

The fact is the surety, in some instances, has longer time than the creditor and, in some, shorter. Thus, if

he should pay a part of a note, upon which he was surety, the day before it was barred by the statute, he would yet have five years in which to bring his action, for his cause of action can only arise when he makes payment (Singleton v. Townsend, 45 Mo. 380), though the creditor would be barred in one day for the balance. On the other hand, he may make such part payment the day it became due, and the creditor might have ten years in which to sue for the balance, while the surety would only have five in which to bring his action. These, of course, are only illustrations, but they serve to show that the rights of the creditor and the rights of the surety have distinct periods of limitation. It may be illustrated further: suppose the surety makes partial payments at different times on the indebtedness represented by a note. The period of limitation would necessarily begin to run on each payment at the time it was made (in case of co-surety, at time the payment was in excess of his share), and thus, on the theory that the surety owns the note, or stands in creditor's shoes, there would be several distinct periods of limitation on the same note. This and other illustrations are stated in Faires v. Cockerell, 88 Texas 428; Angell on Lim., sec. 132.

In an extended examination, I have not been able to find an authority against the position herein expressed save that of Sublett v. McKinney, 19 Texas 439, and Hull v. Meyers, 90 Georgia 674. The former was overruled in Faires v. Cockerell, and Darrow v. Summerhill, supra, and the latter, besides being based on Sublett v. McKinney, was mere *obiter dictum,* since the action brought, as announced by the court, was not such as to permit an application of the creditor's period of limitation; on the contrary, was on the implied promise of the principal debtor, and therefore held to be barred. So, in consequence, all remarks of the court on the other branch were not on the point in judgment. In this connection, there are two cases, one in Ohio (Neal v. Nash, 23 Ohio St. 483) and the other in Wisconsin (Bushnell

v. Bushnell, 77 Wis. 435), to which it may be well to
call attention. In the former State, there is a statute
prescribing a ten-year period of limitation for all actions
in equity and so the court applied, *not the creditor's lim-
itation,* but this statutory limit to that action, it being
in equity. So in the latter State, there is a like statute
and the court said that it would not decide whether such
statute would have application to an equitable action
for subrogation, since the action before the court was at
law on the implied promise.

When the question is looked at from the standpoint
of the surety's right of action, it is quite a plain one.
His right of action, as a matter of course, is the founda-
tion upon which he must recover. His right to subroga-
tion is merely an aid to his right of action. His right of
action is not based on an actual contract or promise of
the principal debtor, or his co-surety, for none has been
made. It is based on an implied promise, which the
law raises up from principles of natural justice and
right, that is, a promise which the law implies has been
made to him when he becomes surety, that he, the princi-
pal, will reimburse him for what he may have to pay,
or, in case of a co-surety, for what he pays over his pro-
portion, by reason of the suretyship. His right to sub-
rogation is only one of the means of obtaining reim-
bursement. It is an incident to his main right. With-
out such obligation, there would not, of course, be a
right to subrogation. So when the obligation is no long-
er effective, the right to subrogation is destroyed. The
statute reads that it shall not be an effective obligation
unless asserted within five years. And this is true
whether the right of the surety arises from an implied
contract, or from natural justice and equity.

That the surety, upon payment of the indebtedness,
may, when necessary to his reimbursement, become, in
equity, the assignee of the note or judgment evidencing
such indebtedness, is everywhere recognized in this
country. In many instances, it may serve him a highly

effective purpose to be considered the assignee of the creditor's instrument itself, upon which he stands as surety. Such instrument may evidence an indebtedness, which is preferred over other creditors, as are many claims which must be presented to assignees, administrators, and the like. It may represent priority of liens in many instances. In some states, taking sureties on a note for purchase money of land does not waive the vendor's lien, and in such cases it would be of great value to the surety to be considered the assignee of such a note with its right to a lien. And so a surety may have paid a note representing the purchase money for a homestead. Or he may have discharged obligations, which were superior to dower. In these and doubtless many other instances, the surety would have a right to use the instrument itself so as to avail himself of the lien. [Carey v. Boyle, 53 Wis. 574; Markillie v. Allen, 120 Mich. 360; State v. Atkins, 53 Ark. 303; Gilbert v. Neely, 35 Ark. 24.] But equity will not make an assignment, where *the sole object is to avoid the Statute of Limitations,* as was the purpose in Brewing Co. v. Jordan, and in this case.

III. The petition alleges, and we must therefore accept it as a fact, that this plaintiff took an assignment of the judgment when he paid it. But that can make no difference in the limitation period. [Johnson v. Belden, 49 Iowa 301; Harrah v. Jacobs, 75 Iowa 72.] The St. Louis Court of Appeals has decided that an assignment of a note to the surety did not alter the rights of the parties, nor give him a cause of action on the note itself. [Williams v. Gerber, 75 Mo. App. 18, 30.] The substantive facts, which give a surety a cause of action against his principal or his co-surety, remain the same. Some courts state that the surety's right of action is based on an implied promise which is raised up by the law against the principal when the surety enters into his obligation, that the principal will reimburse

him if he should be compelled to pay the debt; and against the co-surety that he will reimburse the surety for whatever he pays more than his share of the debt. Other courts state that such rights of action are not referable to a contract, but that the law raises them up from principles of natural equity and justice. But whichever mode of expression is used, *it is an operation of law* and the same Statute of Limitation applies. Whether we say that the surety's right of action arises from an implied promise, or from natural justice, his cause of action is the same, that is, it is for reimbursement for money which he has paid out for another. That cause of action must be proved in the same way when an assignment has been made to the surety of the evidence of indebtedness (such as a note or judgment) as it would be if there had been no assignment. The surety cannot make out his case by merely offering the note or judgment in evidence and proving the assignment. The note or judgment being against him, such proof alone, would show that they were discharged and extinguished by his payment of them. He is confronted with the extraordinary situation of a debtor taking an assignment of a claim against himself. He, therefore, must explain by parol evidence the peculiar relation that he bore to the transaction in order to prevent the usual application of the law that a payment by a debtor extinguishes the obligation. To sustain himself, he must necessarily depend upon extraneous matter. That is, he must show that he was a surety, and what sum he paid to the creditor and that he paid it under conditions which rendered him liable therefor to such creditor. And so the same defenses and the same issues can be made against his right to recover as if he had not taken an assignment. In other words, taking an actual assignment from the creditor is no more than what equity gave him without such assignment; for we have already seen that his mere payment operates as an equitable assignment whenever necessary to aid him in securing the collaterals, liens,

priorities, etc., held by the creditor. By taking an actual assignment, the surety manifestly does not acquire any additional right. He is compelled to depend upon his position as surety, else, as already stated, the assignment itself would be a discharge of the obligation, since it is an assignment to the debtor. He still, notwithstanding the assignment, cannot recover the face of the obligation, but only what he has paid; nor can he recover the rate of interest named in the obligation, but only legal interest from the date of his payment; and it must be shown, if the issue is made, that he paid the debt under such conditions as entitled him to reimbursement. It seems then to be clear that the debtor surety cannot have a cause of action as such, on the obligation upon which he stands as surety, but that his cause of action depends wholly upon matters *aliunde,* and that therefore the period of limitation for the original. obligation is not the period which limits his right as surety.

IV. Plaintiff, however, sets up fraud on the part of Cook in avoidance of the statute. A part of our Statute of Limitations (section 4290, Revised Statutes 1899), provides that if a party by improper conduct prevents the commencement of an action, it may be begun within the proper period of limitation after the commencement of the action shall have ceased to be so prevented. But the fraud charged in the petition did not prevent the beginning of an action. It only went to defeat an execution on a judgment which might be obtained in such action. The statute has no application to such case. The fraud must be of such character as prevented the complaining party from bringing the suit. [19 Am. and Eng. Ency. of Law (2 Ed.), 247.] It is not material to inquire (as plaintiff wishes done in this case) whether a suit would have resulted in collecting the debt. [Simpson c. McPhail, 17 Ill. App. 502.] I must therefore conclude with the trial court that plaintiff's action is barred and that the demurrer to the petition was properly sustained.

Deeming the decision rendered by the majority to be contrary to the previous decisions of the Supreme Court (Singleton v. Townsend, 45 Mo. 379; Burton v. Rutherford, 49 Mo. 255; and Bushong v. Taylor, 82 Mo. 671); and the previous decisions of the St. Louis Court of Appeals (Bauer v. Gray, 18 Mo. App. 164; and Williams v. Gerber, 75 Mo. App. 18), the cause should be certified to the Supreme Court.