Arbogast v. Hays.

No. 11,449.

## ARBOGAST v. HAYS.

PRINCIPAL AND SURETY.—*Promise.*—*Statute of Limitations.*—The right of a surety to sue his principal for money paid as such, upon an implied promise of the principal to reimburse him, is barred after the lapse of six years from the date of payment.

SAME.—*Mortgage.*—*Subrogation.*—Where a surety paying the debt of his principal becomes subrogated to the rights of the creditor in a mortgage given by the principal debtor to the creditor, his action to foreclose the mortgage for his reimbursement is limited to six years, even where the mortgage contains an express covenant to pay the debt secured thereby.

From the Randolph Circuit Court.

E. L. *Watson* and J. S. *Engle*, for appellant.

J. A. *Moorman*, W. A. *Thompson* and J. W. *Thompson*, for appellee.

NIBLACK, J.—Suit by Sanford Arbogast against Elizabeth Hays, commenced on the 24th day of January, 1883.

The facts relied on for a recovery in the action were substantially as follows:

On the 6th day of September, 1869, the First National Bank of Winchester sold and conveyed to Benjamin Hays and Elizabeth Hays, his wife, a tract of land in Randolph county, and for the purchase-money took from Hays and wife four promissory notes, executed by them jointly and severally, payable at different periods of time. The first note was for $900, and was made payable on the 25th day of December, 1869, and was also signed by Sanford Arbogast, the appellant herein, as surety for both Hays and his wife, who on their part also executed to the bank a mortgage on the land to secure the payment of all the notes. The concluding clause of the mortgage was in these words, " and the mortgagors expressly agree to pay the sums of money, above secured, without relief from valuation laws." After the first note fell due, that is to say, in the latter part of December, 1869, Arbogast paid thereon the sum of $500 which has never

been repaid to him. What remained of the purchase-money evidenced by the notes, has since been fully paid. In 1882, Benjamin Hays died, whereupon his widow, Elizabeth Hays, became the owner of the land described in the mortgage as his surviving co-tenant. Arbogast, claiming to have become subrogated to the rights of the bank in the mortgage executed to it by Hays and wife in the proportionate amount paid by him as surety on the first note, commenced this suit against Mrs. Hays to foreclose the mortgage for his reimbursement.

The defendant answered in several paragraphs. The third paragraph set up the six years' statute of limitations as a defence, and a demurrer to that paragraph for want of sufficient facts was overruled. Issue being joined, there was a finding and judgment for the defendant.

The plaintiff, appealing, assigns error only upon the overruling of his demurrer to the third paragraph of the answer.

There is no substantial disagreement between counsel as to the general doctrine of subrogation. Whether the six years' statute of limitations is applicable to and constitutes a defence in a case like this, comprises the only subject upon which there is serious difference in argument. In other words it is admitted that Arbogast acquired the right to be subrogated to the mortgage taken by the bank, and that the right he so acquired still continues unless it has been defeated by his more than six years' delay in bringing this suit.

In the case of *Lilly* v. *Dunn*, 96 Ind. 220, it was held that where a mortgage, containing no express stipulation for the repayment of any sum of money in case of default, had been executed to the surety to indemnify him on account of his suretyship, the six years' statute of limitations ran against proceedings instituted upon the mortgage by the surety for the recovery of money paid by him for the principal; but counsel for the appellant claim that the fair and necessary inference from that case is, that where the mortgage, as in this case, contains an express agreement to pay the money it was

given to secure, the statute limiting actions on written instru-
ments only applies.

Chancellor KENT, in the case of *Hayes* v. *Ward*, 4 Johns.
Ch. 123, in commenting upon the law of subrogation, said :
" This doctrine does not belong merely to the civil law sys-
tem. It is equally a settled principle in the English chan-
cery, that a surety will be entitled to every remedy which the
creditor has against the principal debtor, to enforce every
security, and to stand in the place of the creditor, and have his
securities transferred to him, and to avail himself of those
securities against the debtor. This right of the surety stands
not upon contract, but upon the same principle of natural
justice, upon which one surety is entitled to contribution
from another."

This summary of the doctrine of subrogation has been very
generally accepted in this country as authoritative, and has
been recognized by this court as a fair summary of that doc-
trine, as applicable to this State, in the case of *Gerber* v. *Sharp*,
72 Ind. 553. See, also, *Vert* v. *Voss*, 74 Ind. 565 ; *Sidener*
v. *Pavey*, 77 Ind. 241 ; *Kane* v. *State, ex rel.*, 78 Ind. 103 ;
*Mathews* v. *Aikin*, 1 N. Y. 595 ; Sheldon Subrogation, sec-
tion 1, *et sequitur ;* Brandt Suretyship, section 274.

Brandt, *supra*, at section 176, says : " Upon payment by
the surety or guarantor of the debt for which he is bound,
the same being then due, a right of action for reimbursement
immediately arises in his favor and against the principal. In
the absence of an express agreement the law implies a prom-
ise of indemnity on the part of the principal. If the debt is
due, the right of action on this implied promise accrues to
the surety or guarantor at the time he pays the debt, or a
part of it, and not before."

Wood on Limitation, on page 322, states the rule to be
that " Where there are two or more sureties, and each pays a
moiety of the debt, each has a separate and distinct cause of
action against him " (the principal) " therefor ; consequently,
in such a case, the statute begins to run against the claim of

each from the time when each paid his share. The remedy of a surety is the same whether he was surety upon a simple contract or a specialty debt. His remedy is by *indebitatus assumpsit* for money, and not for money had and received."

Where the whole amount of a bond was paid by one obligor, and he brought assumpsit against his co-obligor for contribution, Lord KENYON considered it doubtful whether the six years' statute of limitations was a good plea. He said that as the demand arose under a *deed*, there had been a case of considerable authority (*Cole* v. *Saxby*, 3 Esp. 159), holding that such a debt was entitled to the same limitation as the deed itself. In the year 1808, the point which had been thus doubted by Lord KENYON came before the Supreme Court of Massachusetts in the case of *Penniman* v. *Vinton*, 4 Mass. 276, which was an action of assumpsit against his principal by a surety upon a bond. Chief Justice PARSONS, delivering the opinion of the court, said that he could not distinguish the case in principle from an action by a surety on a promissory note against the principal for not indemnifying him against the payment of the note; that in such a case it was not denied that the six years' statute of limitations would be a good plea, because the action would not be founded upon the note; that the action then before the court was not founded upon the bond, but on a promise or *simple contract*, for which the execution of the bond furnished a sufficient consideration; that the breach of the promise was the failure of the principal to indemnify the surety against the payment of the bond, and not the non-performance of any contract in which the principal was bound by deed to the surety; that for that reason the six years' statute was a good defence in that action. Angell Lim., section 89. The same rule of decision was recognized, in the most comprehensive terms, in the case of *Sexton* v. *Sexton*, 35 Ind. 88.

In the case of *Lilly* v. *Dunn, supra,* we reiterated what had been often heretofore decided by this court, that in this State a mortgage is only incidental to the debt which it is given to

secure, and that is now, as it long has been, the accepted law of this State. In that case, too, the mortgage was executed to the surety, and not directly to the creditors as in this case, and that constitutes an essential difference between the two cases as is plainly inferable from the authorities herein above cited.

There is nothing in the mortgage under consideration expressive of any contract with, or promise to, Arbogast. The express agreement of the mortgagors to pay the debt would not have kept it alive in the hands of the bank as against the statute of limitations, for a longer period of time than the notes would have done. Arbogast's claim for reimbursement rests simply and solely upon the implied obligation, which the mortgagors assumed, to indemnify him against the payment of any part of the note which he signed with them as their surety.

As has been seen such an implied obligation is one against which the six years' statute may run and be pleaded. The case of *Lilly* v. *Dunn, supra,* is, therefore, in principle, decisive of this case against the appellant. Where a surety pays a debt for his principal, after it is barred by the statute of limitations no right of action accrues to him against the principal. All the analogies deducible from limiting statutes lead us to the conclusion that a surety's right of subrogation to securities held by the creditor can not be enforced after his claim against his principal has been barred by the statute of limitations. This right of subrogation, however complete in any given case, may, like all other remedial rights of a similar character, be defeated by the lapse of the time within which it may be enforced.

The judgment is affirmed with costs.

Filed Oct. 16, 1884.