COMMERCIAL CASUALTY INSURANCE COMPANY *v.* BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY.

[No. 27,128. Filed February 27, 1939. Rehearing denied April 10, 1939.]

441

*Donald L. Smith,* and *William W. Kummings,* for appellant.

*White & White,* for appellee.

SHAKE, J.—In 1930 one Esten Goodin was clerk of the Fountain Circuit Court and had on deposit as such a substantial sum of money in a bank which had previously been designated as a public depository (for other public officers) by the county board of finance. The bank failed and the clerk was unable to pay over certain funds for which he was responsible. Two claimants sued the clerk and the appellant, as surety on the clerk's official bond, and recovered judgments. After discharging the judgments in the year 1930, the appellant filed a claim with the appellee board of commissioners of Fountain County for reimbursement of the moneys by it laid out and expended. The board disallowed the appellant's claim and it appealed to the circuit court. After a change of venue from the county, appellant amended its com-

plaint, to which appellee demurred. The demurrer was sustained; appellant refused to plead further; judgment was rendered against it; and this appeal followed.

The theory of appellant's action is disclosed by a single quotation from its complaint as amended. After reciting in detail the facts summarized above it continued:

> "That claimant (appellant) bases its claim on a law enacted by the General Assembly of 1937 (Ch. 121, Acts 1937, §61-664 Burns' Supp. 1938) . . . and claims by reason of the foregoing facts, and the payment of the money above set forth, to be subrogated to all the rights of Ollie Coats, Fannie E. Myers (they being the persons who recovered judgments against the clerk and appellant) and Esten Goodin (the clerk) to recover said sums from Fountain County, Indiana."

The complaint concluded with a prayer for relief in which appellant offered to assign and transfer to the county the unpaid balance due the clerk from the bank upon payment of the demand.

In *State ex rel. Jackson* v. *Middleton et al., ante* 219, decided at the present term, this court fully considered the constitutionality of the act of 1937 cited above, and held it valid. By its title and terms the act is limited in its scope to the relief, release, and discharge of certain public officers from liability for funds deposited and lost by reason of the failure or insolvency of certain banking institutions. Not one word may be found in the act to indicate a legislative intent or purpose to provide for the reimbursement of such officers, when the losses so occasioned had been made good. Statutes in the nature of public grants must be strictly construed in the public interest. *State ex rel.* v. *Board, etc.* (1906), 166 Ind. 162, 195, 76 N. E. 986. The language of the act does not admit of a construction that would authorize a public officer to claim reimbursement for losses paid.

Appellant concedes that it does not seek to recover upon the theory that the clerk has any right of redress, but says that had it not made good the losses sustained by Ollie Coats and Fannie E. Myers, *they* (Coats and Myers) would have had valid claims against the county under the statute, and that having discharged those obligations it is subrogated to their rights. Appellee answers by asserting that any rights which appellant obtained were fixed by and as of the time it discharged the judgments in 1930, and that it cannot be subrogated to rights subsequently created by the enactment of the statute in 1937.

It is unnecessary to restate the general rules of the doctrine of subrogation, as they are expressed in the reported cases or by the textwriters. The question to be determined may be simply stated. It is this: may an action in subrogation be predicated upon a liability which was non-existent at the time of the performance of the act out of which the subrogation must arise? That is to say, may appellant have subrogation against the county as to a liability which did not exist when it paid the judgments, but which was created by subsequent legislation?

In the first place, the act of 1937 is remedial in character and it does not create any new rights so far as the claimants Coats and Myers were concerned. Prior to its adoption the circuit clerk was responsible to them and the act merely absolved that official from such liability and substituted in lieu thereof the liability of the county. When appellant engaged itself as surety on the clerk's official bond, a situation was created whereby it became entitled to become subrogated as against the clerk for any money it might be required to lay out on his behalf. Appellant's suretyship liabilities were in nowise increased by the act. They were, in fact, substantially minimized since, *ipso facto,* any release of the

liability of the clerk likewise inured to the benefit of his surety. So far as subrogation rights are concerned, the act left the appellant exactly where it was before. It may now proceed against the clerk as it previously might have done. Prior to the adoption of the act it had no subrogation rights against the county, nor had it any when it discharged the judgments. It cannot be seen why it should have any now.

The case of Leach v. *Commercial Sav. Bank* (1927), 205 Iowa 1154, 1161, 1162, 213 N. W. 517, throws some light upon the subject. It was there said:

> "The rights or equities which the creditor has for the protection of the debt, and to which the surety can be subrogated upon payment of the debt, can be none other than those *then* existent. . . . at the time that subrogation became effective, there was nothing upon which it could operate. It must be obvious that a performing surety can only be subrogated to such rights, liens, or other securities as are *in esse*. He cannot be subrogated to a thing that does not exist."

It is true that in the above case the Supreme Court of Iowa was considering a situation where the pre-existing rights to which subrogation was asserted had failed before the party claiming them became entitled to be subrogated, while, in our case, we are concerned with rights that did not exist at the time of payment but with those that have since been created. The reasoning of the Iowa court would appear to be equally applicable to either situation.

Some force may be attached to the cases that have considered the question as to when statutes of limitation begin to run against actions for subrogation. In *Arbogast v. Hays* (1884), 98 Ind. 26, it was held that the right of a surety to sue his principal for money paid as such, upon an implied promise of the prinicpal to reimburse him, is barred after the lapse of six years

from the date of payment. And in *Kreider* v. *Isenbice* (1890), 123 Ind. 10, 23 N. E. 786, this court reaffirmed that rule. If an action in subrogation accrues upon payment of the obligation for which the person claiming the right was liable, such subrogation must be limited to the redress then existing.

Judgment affirmed.

Roll, J., concurs in result.