## STATE EX REL. STEERS *v.* ACREE ET AL.

[No. 20,016. Filed June 8, 1966.]

*Edwin K. Steers, Attorney General,* and *Donald E. Ewers,* Deputy Attorney General, for appellant.

*Gambill, Cox, Zwerner, Gambill & Sullivan,* of Terre Haute, for appellees.

BIERLY, J.—This is an appeal from the Superior Court of Vigo County, No. 2, from a judgment for the Appellee, Everett J. Acree, former auditor of Vigo County, Indiana, and the Appellee, Standard Accident Insurance Company, said auditor's surety, and against the Appellant, The State of Indiana on the Relation of Honorable Edwin K. Steers, Attorney General of Indiana.

The complaint filed by appellant was in two paragraphs. The first was based upon the official bond of Acree and his surety, while the second paragraph was against Acree, Appellee, individually.

Summarizing the first paragraph, it is alleged that the action or cause was brought by Attorney General Steers, the duly elected, qualified and Acting Attorney General of the State of Indiana, founded upon two (2) State Board of Accounts Reports, which reports were certified by the State Board of Accounts Examiners, who filed the same with the Office of the Attorney General; that the Defendant, Everett

J. Acree, was from January 1, 1956 until December 31, 1959, the duly elected, qualified and acting auditor of said county and state; that Standard Accident Insurance Company, Defendant, was surety on the official bond of said auditor during that period; that on or near the fourteenth day of January 1959, the Board of Commissioners of Vigo County entered into a contract with the firm, W. C. Hargis and Son, Inc., wherein the parties purportedly agreed that said company should deliver to Vigo County, for and during the year 1959, bituminous products, to-wit:

". . . paving material known as MC-3 mix in an amount not to exceed 1,600 tons at the unit price of $7.00 per ton, totaling $11,200.00, and an amount not to exceed 200,000 gallons of liquid asphalt, types SC-1, SC-2 and SC-3, at a unit price of 14 cents per gallon totaling $28,000.00; . . ."

It was further alleged that the files in the office of said auditor did not contain a requisition for materials to be used in 1959, filed by the County Highway Supervisor for materials classified as MC-3 mix; that said office disclosed no other contracts for furnishing such materials during 1959, and it was asserted there was no contract in said office entered for the year 1959, by the said Board of Commissioners, and W. C. Hargis and Son, Inc., to provide services and labor to the county, nor any contract for any other type of road mix at the designated sum of $7.00 per ton.

Further, it was alleged in the complaint that for the year 1959, County Auditor Acree issued in his official capacity to W. C. Hargis and Son, Inc., twenty (20) warrants in payment for furnishing the county 4,267.72 tons of MC-3 mix, totaling $29,874.07; two (2) warrants for furnishing the county 1,107.775 tons of trench mix at a price of $7.00 per ton, amounting to $7,754.43; seven (7) warrants for furnishing the county 322,407 gallons of liquid asphalt types SC-1, SC-2, SC-3, in the total sum of $45,178.56; and one (1) warrant in an amount of $500.00 for services to the county including the excavation of trenches and the supervision of the

street paving project at South Second Street, at Terre Haute, Indiana.

It was further alleged in the complaint that during each of the years 1958 and 1959, that the Board of Commissioners, and the Wabash Valley Asphalt Company, Inc., contracted that said company would furnish Vigo County during each of said years, 1,600 tons of Bituminous Coated Aggregate E. A. material for surfacing in the sum of $12,000.00; that during 1958, the auditor, in his official capacity, issued a warrant in favor of that company for a total sum of $15,909.02, for which said company had agreed to deliver to the county 2,121.2 tons of aforesaid bituminous surfacing material; also, for the year 1959, said auditor executed twenty-four (24) warrants to said company in a total sum of $18,446.31, for delivering 2,459.5 tons of said material to said county. In the prayer, appellant seeks damages from both defendants in the first paragraph of its complaint for $10,000.00; that being the amount of the penal sum fixed in said bond.

The appellant in its second paragraph of the complaint alleged essentially the same facts as in the first paragraph and praying a recovery in the sum of $65,662.39 against Appellee, Acree, in his individual capacity, therein alleging this amount was expended without contract. The official bond or a copy thereof was incorporated, attached and made a part of the complaint.

Thereafter Defendant, Standard Accident Insurance Company, filed a cross-complaint admitting the execution of the official bond of Everett J. Acree, which pleading was answered by Appellee, Acree, who admitted and conceded the execution of said bond.

The appellees filed separate answers in four (4) paragraphs which contained essentially the same allegations.

The first paragraph of each answer pleaded a general denial, admitting that the relator, Edwin K. Steers, Jr., was the Attorney General of the State of Indiana; that the action

was to recover money belonging to the state and the political subdivisions thereof, including Vigo County; that each appellee admitted the execution, and also, the verification of Reports Nos. A-9180 and A-9931, by the State Board of Accounts, and the filing of the Reports in the Office of the Attorney General of Indiana; Appellant further admitted the incumbency of Defendant Acree, as auditor during the year 1956 through the year 1959, and that Standard Accident Insurance Company was surety on Acree's bond.

In the second paragraph of answers appellees alleged, to-wit:

"All the warrants issued and drawn by the defendant Everett J. Acree upon which any payments were made from public funds as alleged in Paragraph I of plaintiff's complaint, and in all rhetorical paragraphs thereof, were issued by the defendant Everett J. Acree in good faith, pursuant to order or authority of the Board of Commissioners of Vigo County, Indiana."

The third paragraph of said answers of appellees alleged that the funds that were paid by Appellee Acree were distributed to persons for materials, supplies, merchandise and labor provided for use and benefit of Vigo County, which were essential, suitable and proper for use by said county, and which were received, kept and used by the county, and also by its citizens; further, that all said expenditures were made with the knowledge of all officials and authorities of Vigo County, as well as the state and State Board of Accounts, the knowledge of which was ascertained from the records of said auditor and from audits by the State Board of Accounts. Such materials and services were received and retained by the county without objections of the county, state officials, or citizens of the county and state, and with the County Highway Supervisor's knowledge, and upon orders of the Board of Commissioners; that full value was received for the materials and services received and used by the County; that the auditor made payments in good faith and without fraudulent

intent; and received none of the proceeds of the warrants paid by him. *Monies had been appropriated for the purpose for which the expenditures of funds had been made.* (Our Emphasis.)

The fourth paragraph of answers, in addition to presenting matters essentially similar to that alleged in the third paragraph, further alleged that the payments were made upon claims signed by the claimants as being true and correct, also, signed by the County Highway Supervisor and approved by the Board of Commissioners of said county. Defendant Acree had certified all claims as being in proper form and authenticated as prescribed by law, founded on contracts, either written, or based on statute, and that all were correct.

To each of the second, third and fourth paragraphs of answers appellant filed its demurrers, alleging that the several paragraphs of answers did not state facts sufficient to constitute a defense to the complaint. Plaintiff in its memorandum to the second paragraph contended that the words "in good faith" were a conclusion of law, and could be considered in determining the sufficiency of the answer, and without said language the answers failed to constitute a defense. Plaintiff further contended, that the statute the defense seemed to adopt, Acts of 1911, Sec. 49-3006 (Burns' 1951) fails to relieve the auditor from liability in his failure to perform his statutory duties to withhold claims where there were no legal contracts in evidence.

The memorandum addressed by the plaintiff in support of its demurrers to the third paragraph of answers alleged that inasmuch as the Acts of 1935, ch. 145, Sec. 2, being Sec. 36-1115, Burns' 1949 Replacement, prohibits the payment by the auditor for materials and supplies in question, in the absence of a contract therefor, an equitable defense of Quantum Meruit was not permissible.

Plaintiff's memorandum supporting its demurrers to the fourth paragraph of answer assert that they were identical

to Paragraph III of the answers, and therefore, adopted similar reasoning as stated in opposition to the aforesaid third paragraph of answers.

Plaintiff's demurrers were overruled by the court, thence plaintiff filed its replies to the answers of appellees which placed the cause at issue.

Trial by the jury resulted in the following verdict, to-wit:

"We, the jury, find for the defendants, Everett J. Acree and Standard Accident Insurance Company, and against the plaintiff."

Following the verdict, appellant filed a motion for New Trial, which was overruled and thence the court rendered Judgment consistent with the verdict. From this judgment this appeal was brought.

Appellants' Assignment of Errors omitting the formal parts and signatures is as follows:

1. "The appellant avers that there is manifest error in the judgment of proceedings of this cause, which is prejudicial to appellant in this:

1. The court erred in over-ruling appellant's motion for a new trial."

In charging error by the court in overruling plaintiff's demurrers to the second, third and fourth paragraphs of the answers of appellees, appellant argues Specification 1c and 1d of its New Trial motion, to-wit:

*1c*

"The court erred in overruling plaintiff's demurrer to the second, third and fourth paragraphs of answer of Everett J. Acree."

*1d*

"The court erred in overruling plaintiff's demurrer to the second, third and fourth paragraphs of answer of defendant Standard Accident Insurance Company."

In the second paragraph of answers appellees assert that all warrants specified in the complaint,

". . . were issued by the defendant Everett J. Acree in good faith, pursuant to order or authority of the Board of Commissioners of Vigo County, Indiana."

Further, appellees assert that the second paragraph of answers of specification stated in the language of the statute whereby the defense contemplated in the Acts of 1911, ch. 115, Sec. 1, Burns' Ind. Stat. (1951 Repl.) Sec. 49-3006, may be submitted, and which section in pertinent part is as follows:

"When . . . in good faith any, auditor of any county . . . pursuant to the order or authority of the Board of Commissioners of any such county, . . . shall have issued his warrant upon the treasurer of said county, then and in such event no civil suit shall be maintained against said county auditor or his bondsmen for the issuance of said warrant, although such warrants shall have been drawn pursuant to some order of the board of commissioners . . . which is either void or voidable, but the validation of such act of the auditor shall not prevent the recovery of any sums of money from any person receiving the same that might have been recovered if this act [section] had not been passed."

It is the contention of the appellant that the statement to the effect that payments were made "in good faith" was a conclusion of law, hence adds nothing to the answers. Appellants cited *Scotten* v. *Randolph* (1894), 96 Ind. 581, 585, in support of its contention. This case involved a suit on a promissory note. The Supreme Court held that "in good faith" constituted a legal conclusion hence could not be pleaded. Appellant further argues that even if the phrase "in good faith" were deemed sufficient to constitute a defense, this statute was inapplicable where the acts alleged in the complaint as committed by the auditor were in violation of his duties.

Appellees counter appellant's argument in the *Scotten* case, *supra,* by stating that the term "in good faith" was not used

in defining the status of a "holder with respect to whom defenses of the maker of the note such as lack of consideration would not be available;" that the status of such a holder as one who took the note without notice, "and thus the contested pleading (the complaint) in that case was not drafted in the terms which the statute relied upon by the pleader had used to define the status." The answer had alleged that the holder of the note had taken with notice. We think when a pleader asserts conditions upon which statutory relief is pleaded by using the express words of the statutes, which had been done by the appellees in the second paragraph of answers, we have allegations that are not considered as conclusions of law, but instead must be considered as allegations of ultimate facts capable of withstanding a demurrer.

Appellant in furtherance of its support in presenting error by the court in overruling plaintiff's demurrer to appellees' second paragraph of answers, cited various statutes, to-wit: Burns' Sec. 36-1114 to 36-1116, inclusive.

Section 36-1114, in substance specified that an official in charge of repairs and maintenance of county highways shall file a requisition or requisitions for "tools, implements, supplies, materials and equipment that is needed." It further requires that the county auditor shall make the requisitions available for public inspection, and shall cause to be published in two newspapers published in said county, a notice that sealed bids will be accepted by the Board of Commissioners at the next regular meeting based on requisition or requisitions. Said legal notice shall state the estimated quantity of any article to be bought, when delivery is to be made, time and place where bids are to be received, and that the Board of Commissioners may contract for "less than estimated bid but not in excess of the same." Also, requisitions shall bear detailed specifications. No bid shall be required for purchases under $500.00. Lastly, the Board of Commissioners may employ or contract for teams or trucks and men necessary for

carrying out the repair work, etc., under officials in charge of such repair work.

Section 36-1115 stated in words and figures is as follows:

"The County Auditor. shall draw his warrant in.payment of any claim filed against any appropriation for the repair and maintenance of county highways only after the provisions of this act have been fully complied with."

The Section 36-1116, provides in substance the repealing of all laws and parts of laws in conflict by exempting contracts previously entered into prior to the effective date of this act.

Appellant further cites Burns' Sec. 26-611, wherein it is provided that the auditor shall attend the meetings of the commissioners and record the proceedings; that in substance, Burns' Sec. 49-3004, the auditor, ex-officio, serves as clerk of said Board of Commissioners, and shall keep the records and deliver them to his successor.

In substance, Burns' Sec. 26-538, sets up proceedings for disbursing funds, such as, itemization of claims, verification of claims, and filing the same five days prior to the meeting of the Board of Commissioners. Further, claims for materials must have been bought pursuant to the provisions of law, and approved by the Board of Commissioners. That,

"The commissioners shall not approve any claim for materials or supplies until they are satisfied that the same have been delivered to the county in compliance with the contract. . . . "Such bill or invoice, with such certificate [by the person receiving the material, etc.] shall be immediately filed with the auditor, but the same shall not be allowed by the commissioners unless the auditor certifies in writing that the same corresponds as to quality and prices with the contract. Such certificate shall not be conclusive, but it shall be the duty of the commissioners, before approving any claims, to otherwise satisfy themselves that the contract has been complied with."

Appellant also quoted Burns', Sec. 60-215, which describes the duties of the officer possessing authority "to draw the

warrant of the state or of any municipality referred to in this act in disbursing its funds . . ." Appellant indicated this section refers to "auditor in drawing warrants of the county." The act specified "the duty of every officer authorized to draw the warrants of the state or of any municipality referred to in this act in distributing its funds . . ." It is the contention of appellant as summarized relative to error charged in overruling the demurrers to the second paragraph of answers by appellant, that by the application of the statutes heretofore referred to, the county auditor is required to keep a record of all contracts between the county and third parties in order to check the validity of claims presented for his approval or disapproval. Appellant urges and argues that Burns' Sec. 49-3006, *supra,* only provides relief from liability of the auditor in relying on the judgment and assertions of claimants and the various county officers approving claims "where they do not conflict with and force the auditor to abandon the duties of his office." In stating that the statute should be strictly construed, appellant cited *Com. Cas. Ins. Co.* v. *Bd. of Com. of Fountain Co.* (1939), 215 Ind. 440, 19 N. E. 2d 476, which pertains to an action of the Clerk of Fountain County in filing a claim against the county to recover payment of two judgments where the claimants' funds were on deposit in a depository or bank that had failed. The Supreme Court held that the clerk could not recover for losses paid prior to the Relief Act 1937 ch. 121. Appellant further argued that strict construction as applied to Burns' Sec. 49-3006, would restrict its effect to situations where the auditor exercises his duties in accordance to law. Appellant admits that the auditor could not be held responsible to examine each delivery of material, but of necessity must rely on the county highway supervisor or a party designated by him, but nevertheless, insists that the auditor examine the records in his office and refuse payment of unlawful claims.

In support of their contention that the second paragraph of answers were sufficient to withstand demurrers, appellees

offer consideration of *Humphrey* v. *Mottier* (1911), 48 Ind. App. 469, 96 N. E. 38, therein an allegation using "unsound mind" to define the status of an action under a statute using the words "unsound mind" was deemed sufficient; also, of *The Pittsburgh, Cincinnati, and St. Louis R. R. Co.* v. *Brown* (1873), 44 Ind. 409, and *The Indianapolis, etc., R. W. Co.* v. *Lyon* (1874), 48 Ind. 119, the court held that a statement that the right-of-way was not "securely fenced in" is sufficient in relation to defining the rights of the parties wherein the statute required the right-of-way to be "securely fenced in:" in *Pittsburgh, etc., R. Co.* v. *Newsom* (1905), 35 Ind. App. 299, 303, 74 N. E. 21; *Blanchard-Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398, 69 N. E. 1032, and *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708, the court holds that pleading the duty incorporated by statute in the words of the statute itself is proper.

In *Oliver* v. *Coffman* (1942), 112 Ind. App. 507, 514, 45 N. E. 2d 351, Judge Bedwell discusses the characteristics setting up the distinction among pleadings of conclusions of law, conclusions of the fact and ultimate facts in this paragraph as follows:

"The line of demarcation between 'ultimate facts' or 'conclusions of fact,' and 'conclusions of law,' is quite often shadowy and indistinct, and it is difficult, if not impossible, to formulate a definition that will distinguish a conclusion of law from a conclusion of fact or from an ultimate fact. Some times an allegation which ordinarily would be considered an allegation of fact will be regarded as a legal conclusion when based upon other allegations. An example is an allegation of the ownership of specific property. While considered an ultimate fact, if standing alone, it will be considered a conclusion of law where the pleader sets forth a claim of title, and upon the claim so pleaded alleges ownership. *Wagner* v. *Law* (1892), 3 Wash. 500, 28 P. 1109, L. R. A. 784."

Appellee's thus contend that in their second paragraph of answers, they plead good faith in the terms set forth in the

statute, and no other allegations of any claim or of evidentiary facts upon which the status of good faith is alleged to be founded. It is thus contended that measured by the problems set forth in *Oliver* v. *Coffman* case, *supra,* ultimate facts are pleaded in the answers and it is submitted that in line with the authorities heretofore referred to, appellees' second paragraph of answers are sufficient to plead the defense set forth by Burns' 1951 (Repl.) § 49-3006. Even though appellant cited several statutes as heretofore pointed out, which he contends are relevant to the duties of a county officer as applicable under such circumstances as might be relevant under the specific statutes cited, none the less, said Section 49-3006, as pleaded in said second paragraph of answers unconditionally bestows immunity from civil action to the county auditor when issuing warrants predicated upon invalid authority, when acting in good faith, regardless of whether the auditor acted improperly in issuing a warrant upon such invalid consent from the board of commissioners. This statute § 49-3006, should imply the directive of the legislature to exempt the auditor under certain circumstances from being chargeable with the general prohibition that the auditor perform certain functions as required by law.

Heretofore, in the case of *Commercial Casualty Insurance Company, Supra,* we stated that a Clerk of a Circuit Court was denied reimbursement for money paid out by him since there was a loss of deposits in an insolvent bank which had been designated a public depository. This was prior to the passage of the relief act. In the case of *State ex rel. Jackson, Attorney General* v. *Middleton* (1938), 215 Ind. 219, 20 N. E. 2d 509, the court held that the same statute relieves the clerk of the Circuit Court from repaying money lost in a public depository.

In the case at bar, appellant sues to recover from the county auditor for the benefit of the county, funds which appellant claims were illegally expended. Here, we do not have a situation where the auditor seeks a reimbursement for himself

for funds paid out, nor do we have a case of a contractor who had transacted business for the county and had attempted to collect the amount of money for the supplies or materials sold.

Both the appellant and the appellees cite *Miller* v. *Jackson Tp.* (1912), 178 Ind. 503, 99 N. E. 102; and also, a statute, Acts 1911, ch. 291, p. 693, in light of and in behalf of their respective positions taken in the case at bar. Chapter 291, of the 1911 Acts of the General Assembly is a so-called relief act specifically granting relief to township trustees who disbursed funds in good faith but illegally.

The burden was still placed upon the trustees to demonstrate good faith. In contrast, the county relief act does not demand that the auditor show the essential elements of good faith.

We have a distinction between the case at bar, and in the *Miller* case, *supra*. In the *Miller* case, the trustee, as the official involved, was solely responsible for purchasing the materials in question; and therefore, responsible for obtaining materials at the price determined in the contracting procedure.

In the case at bar, the auditor is not responsible for, nor does he possess any authority to buy the road materials or pass judgment upon the price involved, but the auditor is bound by any such contract including the price of materials or supplies contemplated thereby, which may be entered into by the Board of Commissioners as a result of competitive bidding. The auditor is bound by the opinion of the commissioners and the highway supervisor with respect as to the time the material is needed, the amount to be ordered from time to time, and whether or not the materials conform with the type requested; and hence, suitable for the purpose ordered and requested, and also, whether the materials have been received and used by the county. Appellant tendered Instruction No. 11, as follows:

## INSTRUCTION NO. 11

"I instruct you that the defendant Acree, had a duty to perform the acts required of him by law as county auditor of Vigo County.

"I further instruct you that the defendant Acree could not rely on the assurances or representations of other persons or public officers as to the existence or non-existence of records which the defendant Acree was charged by law to keep in his possession, and I further instruct you that the defendant Acree could not rely on the assurances of other persons or public officers and thereby neglect to perform his own duties as required by law."

This instruction involves the failure of the officer, Acree, to perform certain duties, and that he could not rely on third parties to advise him that certain records were in his office; and therefore, error was committed by the court in refusing to give such instruction. Appellant cites 22 I. L. E. Officers, Section 73. We are of the opinion that this instruction is an erroneous statement of the law as the auditor by exercise of reasonable diligence and in good faith is entitled to rely upon the responsibilities of others including public officials with respect to records he is charged by law to keep so long as he exercises reasonable care in relying upon such assurances. Also, he is entitled to rely on assurances with respect to his obligations in the performance of his duties as auditor.

We think the auditor acted within the scope of his authority, when relying upon verified statements of claimants, when relying upon certified statements of the highway supervisor, and departmental heads, when guided by advice of the county attorney, and when following the determination of the Board of Commissioners. We also think that this instruction as given, would have invaded the province of the jury in the consideration as to whether or not the auditor acted with reasonable diligence and good faith. Section 49-3006, *supra,* provides that good faith relieves the auditor from responsibility; Section 60-215, *supra,* demands

only that the auditor determine the apparent correctness of the claim; and, that the cases of *Miller, supra,* and *State ex rel., Farris* (1925) 197 Ind. 128, 150 N. E. 18, provided that good faith and due diligence on the part of the auditor provides a defense. 12 Ind. Law Encyclopedia, Evidence, Section 27 p. 454, 456, calls attention to the principles and case citations of authorities to the effect that a public official, unless the contrary is shown, is presumed to have performed his duty, and it follows that the auditor can rely upon the presumption that other officials and employees were not remiss in their exercise in the management of his office.

We think that appellees tendered Instructions No. 7, 10, 13, 14 and 16, all given by the court, adequately covered the same subject matter erroneously involved in Instruction No. 11, insofar as the auditor's duty pertaining to his office is concerned, and the fact that he holds responsibility for the acts of his employees, the court's refusal to give Instruction No. 11, is not harmful.

Appellant's tendered Instructions No. 19 and 20, but refused by the court reads as follows:

## INSTRUCTION NO. 19

"I instruct you that any party or contractor dealing with the county is bound to take notice of the limited powers of the county and its officers, and of the law governing the county in making contracts.

"I, therefore, instruct you that if you find from a preponderance of the evidence that no contract existed between the county and the contractors for services and materials, then, in arriving at a verdict you must find that the county was not legally indebted to such contractors for the materials and services so furnished."

## INSTRUCTION NO. 20

"I instruct you that any party or contractor dealing with the county is bound to take notice of the limited powers of the county and its officers, and of the law governing the county in making contracts.

"I, therefore, instruct you that if you find from a preponderance of the evidence that no contract existed between the county and the contractors for services and materials, then, in arriving at a verdict you must find that the county was not legally indebted to such contractors for the materials and services so furnished, and thus the payment of claims for such materials and services by the auditor damaged the county in the amount of the money paid."

It is elementary that parties dealing with a municipality are bound to take notice of the limited powers of the municipality and of the laws governing the municipality in making contracts. *Hamer* v. *City of Huntington* (1939) 215 Ind. 594, 21 N. E. 2d 407; *Moss* v. *Sugar Ridge Tp.* (1903) 161 Ind. 417, 68 N. E. 896. The jury was entitled to know that the contractors in this case could not recover for materials furnished the county under unlawful contracts and that the county was damaged in the amount of the payment by the auditor.

There is a distinction to be drawn by the circumstances under which a county auditor may be compelled to pay for materials purchased without a valid contract, and the circumstances under which the county may be reimbursed for funds paid out. These instructions deal with whether or not the county is indebted for materials or supplies furnished without contract rather than the situation as to whether the county may be refunded money or funds already paid. We think the instructions are outside of the issues tendered by the pleadings, and the evidence which is undisputed.

It is our view that the instructions are without the issues, because none of the contracting parties to whom any of the payments are made on the involved claims at bar, are parties to this case, neither is it the responsibility of any of such contracting parties to a county or to any other person involved in this litigation. These two instructions are mandatory in form and inasmuch as they fail to contain all of the essential elements upon which peremptory instructions must

be predicated, in that the county may be legally indebted even to the contractors, who are not parties to the litigation, under the circumstances such as those set forth in *Miller, supra,* regardless of whether a contract exists which is valid. We also think the instructions are erroneous and misleading by implying that the county auditor is bound by the reason of the legal obligations, if any, of the contractors involved and no evidence is forthcoming, nor is there any issue, submitted under the involved pleadings in the case at bar upon which there could be based any connection between the auditor and any contractor.

Appellants tendered Instructions No. 21 and 23, were refused by the court. These follow:

## INSTRUCTION NO. 21

"Evidence has been admitted in this cause with respect to an oral agreement between the Board of County Commissioners and a contractor, W. C. Hargis & Son, Inc., for furnishing Vigo County materials and labor for the repair of a certain street named as South Seventh Street in Vigo County, Indiana. I instruct you that this oral agreement was void."

## INSTRUCTION NO. 23

"It has been stipulated between the parties that during the year 1959 the amount of $500.00 was paid to a contractor, W. C. Hargis & Son, Inc., for furnishing Vigo County, Indiana, services consisting of excavating trenches and supervision of a street paving project. I instruct you that said $500.00 was not paid pursuant to any existing lawful contract."

These instructions appear to invade the domain of the jury, and are without the issues submitted by the pleadings and the evidence in this case at bar, and are erroneous statements of the law in that the fact and agreement, if one existed, was oral rather than written, does not make such an agreement void. The instructions alleged that the oral agreement referred to in the evidence was void regardless as

to the amount of the agreement, and further, regardless of the circumstances when the agreement was made, and regardless of whether the involved officers, in making such agreement, acted with reasonable or due diligence and in good faith under conditions or circumstances in which the evidence fails to establish any connections, business or otherwise, between the county auditor involved and the contractor designated in said instructions. We think the instruction invades the province of the jury in that the determination as to whether the circumstances were such that the payment of the $500.00 to the contractor resulted in a lawful contract. This is for the jury to decide. Said instruction is an erroneous statement of the law since an arrangement or payment of $500.00, or less, does not require the same technical procedure as is the case when the contracts for payment of services deal in greater amounts. The instruction is mandatory in form, but fails to possess all of the essential elements required of a mandatory instruction.

The appellant's Instructions No. 24, 25 and 26, are in the following words and figures, to-wit:

## INSTRUCTION NO. 24

"It has been agreed between the parties that during the year 1958 the total amount of 2,121.2 tons of Bituminous Coated Aggregate EA Surfacing Material were furnished to the county by a contractor, Wabash Valley Asphalt Company, Inc. and the amount of $15,909.02 was paid for said Bituminous Material from the funds of Vigo County on warrants drawn by the defendant Everett J. Acree, acting in his official capacity as auditor of Vigo County. I instruct you that 521.2 tons of said Bituminous Material was furnished to Vigo County and $3,909.02 paid for said Bituminous Material without a lawful contract therefor."

## INSTRUCTION NO. 25

"It has been agreed between the parties that during the year 1959 the total amount of 2,459.5 tons of Bituminous Coated Aggregate EA Surfacing Material were furnished

to the county by a contractor, Wabash Valley Asphalt Company, Inc., and the amount of $18,446.31 was paid for said Bituminous Material from the funds of Vigo County on warrants drawn by the defendant Everett J. Acree, acting in his official capacity as auditor of Vigo County. I instruct you that 859.5 tons of said Bituminous Material was furnished to Vigo County and $6,446.31 paid for said Bituminous Material without a lawful contract therefor."

### INSTRUCTION NO. 26

"It has been agreed between the parties that during the year 1959 the total amount of 322,704 gallons of liquid asphalt types SC-1, SC-2 and SC-3 were furnished to the county by a contractor, W. C. Hargis & Son, Inc., and the amount of $45,178.65 was paid for said liquid asphalt from the funds of Vigo County on warrants drawn by the defendant Everett J. Acree, acting in his official capacity as auditor of Vigo County. I instruct you that 122,704 gallons of said liquid asphalt was furnished to Vigo County and $17,178.65 paid for said liquid asphalt without a lawful contract therefor."

These tendered instructions by appellant were refused by the court.

We believe these instructions are mandatory in form, but fail to include all essential elements required of a mandatory instruction. These invade the province of the jury in specifying circumstances and facts upon which the payments as stipulated were made, in order that the legal conclusions whether or not lawful contracts were involved can be determined. Also, we think that the instructions contain erroneous statements of the law in that the fact, that the payments made for tonnage or gallonage stipulated fails to constitute a contract, if there be any, upon which would constitute a lawful contract.

If the court committed any error in refusing these tendered Instructions, Nos. 24, 25 and 26, it is our opinion that such error was cured by the court's Instruction No. 1 and 2.

Appellant's Instruction No. 27, was refused by the court. Said instruction so tendered reads as follows:

### INSTRUCTION NO. 27

"I instruct you that one (1) of the defenses of the defendants is that the materials and services furnished to the county were used by the county, cannot be returned, were necessary, were of value equal to the expenditures from county funds, and the transactions involved were without fraud. You should not consider this *defense* in arriving at your verdict."

This instruction invades the province of the jury; and, also mis-states the defense submitted under the first and third paragraphs of answers by appellees. It is mandatory in form, but lacks material elements required of a peremptory instruction. The subject matter of Instruction No. 27, we think was probably covered and without objection by either appellant or appellees in the court's preliminary Instructions No. 5 and 7, and such were re-read to the jury following the close of all of the evidence.

Appellant objected to the court's Instruction No. 3, on the basis it was not supported by the evidence, and that there was no evidence of value or necessity claiming that the instruction must be relevant to the issues and applicable to the evidence, and cited Flanagan's Indiana *Trial and Appellate Practice* § 1510 (2). Appellant further charges that this instruction commingles several defenses. We think that the evidence of necessity is included in the testimony of Miller, County Highway Supervisor, and added thereto in his written certificate endorsed upon each of the claims, and attached thereto, the requisitions he signed for the involved materials. The evidence of necessity is also included in the acts of the Board of County Commissioners in the acceptance of bids for the materials and subsequently in allowing the claims. Further, necessity exists because public officials, including the County Highway Supervisor and County Board of Commissioners,

determines what materials are necessary for the maintenance and repair of county highways, also, the value is shown by the acceptance and certification by the Highway Supervisor that the materials are suitable for the purposes ordered. Further, said supervisor gave testimony that the materials were used and corresponded to the materials ordered. Open bidding set the value of the materials on the basis of the requisitions. The fact that the materials were delivered, received and used by the county, and are still in use on the roads, including South Seventh Street, demonstrates the value of the materials. The basis of this instruction is supported by *Miller* v. *Jackson Township, supra.*

Appellant objected to the court's Instruction No. 4, alleging it was a mis-statement of the law with respect to good faith, because it permitted the jury to consider the fact that the auditor could depend upon his own certification as to the validity of the claim, and that the instruction does not inform the jury that the auditor is required to adhere to his duties when processing a claim.

It appears to us that it is not the intent of the instruction to cover all points of the law in one instruction, and the jury was so appraised by Instruction No. 12, given by the court at the request of the appellant. The Instruction No. 4 is based upon appellees' theory of defense as, heretofore represented, in appellees' four Paragraphs of Answer relative to the ruling of the court on the demurrers.

The court's prepared Instruction No. 5, was objected to by appellant for the alleged reason that the instruction assumes facts not corroborated by the evidence, also that the instruction does not define "mistakes" and intermingles several defenses. Appellant also takes issue with the court's instruction that the county may be liable for money paid out in the case at bar. Appellant cites *Hamer* v. *The City of Huntington et al., etc., supra;* and *Moss* v. *Sugar Ridge Tp., supra.* These cases adopt the principle that the county is not liable for money expended contrary to law.

These cases are distinguishable from the case at bar inasmuch as the moneys paid out in the case at bar were not paid to a contractor with respect to whom the appellee, the county auditor, had any business relationship, and furthermore, the moneys were not paid to or for the benefit of the auditor. The case at bar, was not a transaction in which moneys are sought to be collected from the county under an illegal contract, but are sought to be recovered by the county following payment to the contractor from a public official who did not receive the money, nor who derived any financial benefit from said transaction.

Appellees' tendered Instruction No. 10, given by the court and which is as follows:

### INSTRUCTION NO. 10

"The Board of County Commissioners have the power to contract and may contract in the manner provided by law for the purchase of all road and bridge repair material and for all tools and machinery and supplies necessary for the proper repair of such roads as the County Highway Supervisor shall from time to time deem necessary."

was objected to by the appellant on the grounds that the same was ambiguous, and that it does not state the law applicable in the case at bar, since it implies that the County Highway Supervisor may from time to time come forth with a request for materials he deems necessary, and then the County Commissioners may contract for the material merely on the decision of the County Highway Supervisor. The instruction states that the commissioners have the power to contract in such manner as the law provides for the buying of road materials which the Highway Supervisor's judgment dictates. We do not believe that this instruction informed the jury that the materials may be bought on a casual basis at the whim of the Highway Supervisor, but the jury was given adequate instructions by the court giving tendered Instruction No. 1, at the request of the appellant in reference to the terms

and provisions of Burns' § 36-1114. In addition to this statute § 36-1114, the Acts of 1933, ch. 27, § 10, as amended last by the Acts of 1961, following the enactment of the statute referred to by appellant, Burns' Ind. Stat. Annot. 1963 (Supp.) § 36-1110; and also, Sec. 5 of ch. 27 of the Acts of 1933, Burns' Ind. Annot. 1949 Replacement § 36-1105, all support this view. This section in relevant part provides:

> "The board of county commissioners shall have power to contract, and may contract in the manner provided by law, for the purchase of all road and bridge repair material, and for all tools and machinery and supplies necessary for the proper repair of such roads, as such county surveyor shall, from time to time, deem necessary . . ."

The County Highway Supervisor of Vigo County, is charged with the same duties as specified by the County Surveyor in the foregoing statute, and hence the appellees' Instruction No. 10 is the correct statement of the law as included in the 1933 Acts.

Appellees' tendered Instruction No. 12, given by the court is as follows:

### INSTRUCTION NO. 12

> "The public Fund known as the Special Road Fund, from which all of the payments were made as alleged in plaintiff's complaint, are under the exclusive supervision and direction of the Board of County Commissioners in the construction, reconstruction, maintenance or repair of the County highways, and/or bridges on such county highways within the county, and claims against the special Road Fund are to be settled and allowed by the Board of County Commissioners."

Appellant claims said instruction is confusing, misleading and contrary to § 36-1114, to § 36-1116, *supra*, and said instruction was improper. Heretofore, specific comment to the effect that exclusive control of the Board of County Commissioners over the Special Road Fund was adequately discussed in connection with the court's ruling on demurrers to the third and fourth Paragraphs of Answer.

Specific reference was made to Burns' Ind. Stat. Annot. 1960 Replacement § 26-807, which provides that the county commissioner allow the claims that they determine just ▇ and owing, and, to § 36-2817, 1949 Replacement, which specifies that the Special Road Fund shall be under the exclusive supervision of the Board of Commissioners in the construction, reconstruction, maintenance and repair of the county highway system. This exclusive control and responsibility of the Board of County Commissioners over the procurement of materials for and the maintenance of highways is supported by the case of *Warren* v. *State of Indiana* (1935) 208 Ind. 526, 196 N. E. 710, and the case of *Bateman* v. *State* (1938) 214 Ind. 138, 14 N. E. 2d 1007.

Appellees' tendered Instruction No. 14, which reads as follows:

### INSTRUCTION NO. 14

"You are instructed that at all times complained of in plaintiff's Complaint there was a statute in the State of Indiana in full force and effect, which provided in part as follows:
'Upon the allowance of any claim against any county in the State of Indiana by the Board of Commissioners of such county, and for the payment of which claim appropriation has been made by the proper authority, the county auditor of such county shall issue his warrant therefore.'"

and given by the court was objected to by appellant in that it was calculated to mis-lead the jury, also stating that it was a mere abstract legal proposition, and, if taken literally, conflicts with Burns' 36-1115, *supra*. Appellant further claims that this statute should be construed as permissive, and that instructions which were calculated to mis-lead the jury are improper and called for reversal.

The foregoing instruction is a direct quotation from Ch. 155 Sec. 1, of the Acts of 1911, Burns' 1960 Replacement § 26-813, and we deem it to be pertinent under the ▇ issues in this case at bar. The auditor by this statute is directed to issue his warrant when the Board of

Commissioners has allowed a claim for which an appropriation has been made, and this fact is germane in determining whether the auditor has acted in a reasonable manner in the case at bar, since all claims by stipulation are presented as itemized, verified, certified by proper officials, and then allowed by the Board of Commissioners. We do not perceive that this instruction has mis-led the jury inasmuch as a correct statement of the legal principle involved was given the jury. We fail to see how the difficulty, if there be any, in reconciling the application of the separate and several legal principles given the jury, can be said to constitute the misleading of the jury. Appellant's Instruction No. 1, given to the jury contains the Statute of 36-1115, and was quoted verbatim.

Appellees' tendered Instruction No. 17, and the same is as follows, to-wit:

### INSTRUCTION NO. 17

"The County Highway Supervisor is required by law to file annually with the auditor his requisition in which he requests the purchase of the materials he anticipates will be required for the repair and maintenance of the county highways for the ensuing year. This requisition in addition to naming and requesting the materials required shall include an estimate of the quantities that may be required during the ensuing year and such estimates as may be approved or amended by the Board of Commissioners and upon appropriation shall become the budget, and shall be available to the Board of Commissioners for repair and maintenance of the county highways. The Board of commissioners shall have the right to enter into contracts at the bid price for quantities less than the quantities estimated in the requisition and shall not enter into contracts for any larger quantities than actually requisitioned. Upon request of the County Highway Supervisor the Commissioners may at any time increase or decrease any item in the budget provided that the expenditure does not exceed the amounts available in the Special Road Fund which have been appropriated for the purposes for which the expenditure will be made."

was objected to by appellant on the ground that the last part of the instruction which states that the highway supervisor and the commissioners may at any time increase or decrease any item in the budget, providing that all appropriation is not exceeded, is confusing, mis-leading and hence conflicts with Burns' 36-1114, *supra*, which limits materials purchased in the terms of the contracts. Hence, appellant claims error by the court in the giving of this instruction.

Appellees claim this instruction is based upon the reconciliation of the provisions of the general highway maintenance Act of 1933, ch. 27, Sec. 3, referred to by the Indiana Supreme Court in *Bateman* v. *State, supra,* [Burns' 1959 Repl. § 36-1103], with the Acts of 1935, ch. 145 [Burns' 1963 Supp. § 36-1114], taking into account the fact that the expenses for the maintenance and repair of county highways are paid from the motor vehicle gasoline tax funds as specified by the Acts of 1932 (Spec. Sess.) ch. 16 Sec. 5, [Burns' 1949 Repl. § 36-905], upon appropriation by the county council as contemplated by the 1935 amendments of the Acts of 1899 ch. 154 [Burns' 1960 Repl. § 26-522], wherein a special bond fund is set up controlled and supervised by the Board of County Commissioners as set forth in the Acts of 1941, ch. 168 Sec. 3, as amended, [Burns' 1949 Repl. § 36-2817.] While this instruction states that the commissioners may not contract for quantities greater than actually requisitioned, yet the instruction recognizes the exclusive control by the commissioners to increase or decrease the funds budgeted provided the commissioners operate within the amounts available in the Special Road Fund which had been appropriated for the purposes or uses for which the expenditures would be made.

We are of the opinion that this instruction attempts to reconcile all of the statutes urged by both appellant and appellees to be relevant and explains for the jury the application of these statutes incorporated in numerous of the other instructions in separate form. Here, we have the undisputed testimony of the highway supervisor, the

county attorney, and the auditor outlining the intentions of these officials to employ the annual estimate requisitioned with the "open end" type contract procurement, and the claims appear to have been certified by the highway supervisor and allowed by the county commissioners show that the county commissioners were operating under the principle that the appropriations represented the top limit in dollars and cents that the commissioners were authorized to spend, and the estimate type requested based on the annual requirements showed a variable gallonage and tonnage to be required from time to time in accordance with the actual highway maintenance requirements from year to year as they existed thereunder, hence this instruction conforms with the legal analysis heretofore discussed in relation to the court's ruling on the demurrers to appellees' third and fourth Paragraphs of Answer. We conclude that the court did not commit error in giving this instruction to the jury.

During the course of the trial, Casper Hudson and Matthew Michaels, Examiners of the State Board of Accounts, and Stanley B. Miller, Deputy Attorney General, were called and testified for the plaintiff-appellant. F. D. Mendenhall, a special engineer, was called by appellant as a rebuttal witness.

Doris F. Tyron, Deputy Auditor, Leonard Kincaid, County Attorney, A. Leroy Lewzader, County Auditor at the time of the examination of the records, Joe Miller, County Highway Supervisor, and Everett J. Acree, Defendants-Appellees, were witnesses for the Defendants-Appellees.

Appellant in its motion for a new trial set forth four main specifications:

"(1)  Irregularity in the proceedings of the court by which plaintiff was prevented from having a fair trial in this to-wit:" (Appellant set forth specifications a, b, c, and d).

"(2)  Error of law occurring at the trial as follows:" (Appellant gave sub-divisions a-b-c-e-f-g-h-i-j, k, l, m and n which included Pages 104 to 127, inclusive of appellant's brief).

"(3)   The verdict of the jury was not sustained by sufficient evidence."

"(4)   The verdict of the jury is contrary to law."

With respect to the third asserted error in the new trial motion it is a well established principle that negative decision may not be attacked on the grounds of insufficient evidence to sustain it. *Pokraka* v. *Lummus Co.* (1952) 230 Ind. 523, 528, 529, 104 N. E. 2d 669; *Wright* v. *Peabody Coal Co.* (1948) 225 Ind. 679, 686, 77 N. E. 2d 116; *Wilson, Admx.* v. *Rollings* (1938) 214 Ind. 155, 158, 14 N. E. 2d 905.

The fourth specification in motion for new trial, appellant charges the verdict is contrary to law. Appellant's condensed recital of the evidence leaves some information to be desired germane to evaluating the intent of the officials, for credibility, and a sufficiently impartial recital of the evidence sufficiently helpful to make a judgment as to whether the verdict of the jury is sustained by sufficient evidence and/or is contrary to law.

Appellees charged appellant's brief "fails to include a condensed and impartial recital of all evidence material to a determination of whether or not the verdict of the jury is sustained by sufficient evidence or is contrary to law." This fails to comply with the requirements set forth in Rule 2-17(d) of the Rules of the Supreme Court. While appellees agree that they may supply the deficiencies, yet no obligation rests upon them to do so. While not waiving the position taken relative to the inadequacies of appellant's brief, appellees proceeded to discuss the merits of the appeal.

We think the evidence admitted was sufficient to sustain a finding that the requisitions placed on file in the auditor's office prior to advertising for bids and listing the involved materials dispel any question of inadequacy of the specifications on file.

It appears that the requisitions, properly evaluated, con-

stituted a request on the part of the highway supervisor for materials thereon listed as may be determined to be necessary for the maintenance, construction and/or re-construction of the highways for the year involved. The highway supervisor placed an estimate on the requisitions in the total unit column which he determined to be within a reasonable range of the estimated actual requirement for the purposes of providing a minimum bidding commitment for bidders but contemplating that no more material was to be considered therein than the actual annual requirements, unless a specified minimum was set forth therein, and a bid was placed thereon which exceeded the actual annual maintenance requirement.

As to the actual amount needed, this could be requested by the highway supervisor when acting under the direction of the Board of County Commissioners in the maintenance of county roads in the given year. So the actual amount needed for the year 1959, as disclosed by the several purchases made and used, and which proved to be necessary for 1959, amounted to an excess of 200,000 gallons, which excess was bought at the price set on the bidding under this requisition.

The requisition form itself contains among its clauses the following, to-wit:

> "All supplies shall be furnished in such quantities and at such times as the county officers need same; it is stipulated, however, that amounts to be purchased shall not exceed the supply necessary for one year except where minimum bid upon does so.

> "Bids shall be submitted on the unit basis only and not on quantities. The county auditor is required to set out quantities in the specifications for the information of the Board of County Commissioners only. Such quantities shall not control or be a part of the contract, nor shall constitute orders under the contract."

The crux of the situation resolved itself as to whether the requisition limited the amount of specific tonnage or gallonage noted therein or to cover also materials listed in whatever

quantities the annual requirements of the highway department might be, and the same to be purchased where needed at the unit price set by the bidding upon the estimated quantities included in the requisition. According to the evidence the county officials of Vigo County and the bidders had for years taken the view last above expressed, and this evidence it appears must have impressed the jury. It further appears that the jury concluded that the auditor acted in good faith rather than at his peril in apparent violation of a statute.

When considering Burns' Ind. Stat. Annot. 1960 Repl. § 26-536, and Burns' Ind. Annot. 1949 Repl. §§ 36-1103 and 36-1110, the Board of Commissioners were required to buy on contracts for and procure materials and supplies set forth in the requisitions, but if additional supplies are needed purchases may be made of the contractor at the same price set in the contract.

It further appears that purchases of materials and supplies for county institutions, subsistence for inmates and such items needed for maintenance of roads, shall be excepted from the general provisions of the Acts. *Bateman* v. *State, supra.*

The auditor, highway supervisor and county attorney testified that in procuring road materials and supplies, each followed the procedure that the requisitions cannot be limited for a part of a year, but that the requisitions must be specified quantities as an estimate for the entire year.

We think there was sufficient evidence to sustain the finding that the Seventh Street project involved only the buying of materials which included the so-called MC-mix and that the county attorney advised the county auditor that nothing more was involved than the purchase of materials under the regular procurement contract. Further, that no additional contract was thence necessary.

It seems that the auditor upon the advice of the county attorney determined that the law permitted the expenditure of $500.00 for services requiring no contract when an arrange-

ment was for such expenditure by authority of the Board of Commissioners. The jury apparently accepted this evidence as presented.

The record shows open and competitive bidding in determining the unit prices of the provided materials. Testimony of the highway supervisor was to the effect that his certificate was attached to each of the claims specifying that materials had been supplied the county, after being ordered by him; also, that materials had been used in the county and had been necessary for needed improvements; also, that Board of Commissioners allowed the claims presented. These approvals went to the merit of value of materials as being reasonable.

In the case at bar, we have a situation where an auditor is charged with spending the county's money or funds, but who personally received not one penny of such expenditure which appellant admits, and where the county received the materials and supplies for needed purposes, and where advice, consent and approval by the highway supervisor, county attorney and Board of Commissioners were necessary to authorize the issuing of warrants in payment of claims presented. The jury apparently determined that the auditor acted with due diligence and in good faith.

Appellee, Acree, testified that he refused to submit claims to the board which he believed were incorrect, and when he believed claims were correct, he would affix his signature in certification thereof. This testimony no doubt had a favorable effect upon the jury's verdict.

We agreed with appellant that custom and usage that which is contrary to law is not legal, yet in the case at bar, we have an interpretation of the meaning of the governing statute and of requisitions, that developed into custom and usage upon the part of officials thereby signifying the intentions of officials involved. Evidence indicated in the case at bar, that officials of the county had followed this custom and usage, and

that prior to this time, the State Board of Account audit had endorsed or at least passed such practices.

Protestation by the auditor of good faith alone would fail to be a sufficient defense, but that testimony of custom and usage, added to testimony of highway supervisor, the county attorney and deputy auditor, seemed sufficient to provide an ample basis upon which the jury may agree with the contention of appellees.

In the case at bar, we do not have a situation wherein an attempt was made to enjoin the performance of a contract, or payment of money under contract, or a case of a township trustee entering into contract to provide coal for himself; and, hence the several cases cited by appellant are not controlling in the case at bar.

Whether or not the actions of the County Commissioners, the Highway Supervisor, and/or the County Attorney, in the case at bar, were reasonable are beside the issues inasmuch as they are not charged with wrong doing, but the action lies solely against the auditor, who had cause to rely upon the judgment of the officials heretofore named.

We think that the jury, in the case at bar, was convinced without the shadow of a doubt that the auditor, Acree, acted in a manner devoid of dishonesty, devoid of secrecy, devoid of deceit, devoid of pecuniary gain, devoid of fraud, and that the municipality obtained value received for money spent, and, hence the appellees should not be held liable on the charge made; that the verdict and the judgment is not contrary to law.

We are of the opinion that appellant having failed to establish reversible error, the verdict of the jury and the judgment of the trial court should be affirmed.

Judgment affirmed.

Mote, J., concurs.

Hunter, J., and Smith, J., concur in result only.

NOTE.—Reported in 217 N. E. 2d 167.